J-S43029-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| ANGELA DOUGLAS | : | |
| | : | |
| Appellant | : | No. 594 MDA 2023 |

Appeal from the Judgment of Sentence Entered November 9, 2022
In the Court of Common Pleas of Franklin County
Criminal Division at No(s):  CP-28-CR-0001127-2021

BEFORE:   McLAUGHLIN, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY KING, J.:                    **FILED FEBRUARY 01, 2024**

Appellant, Angela Douglas, appeals from the judgment of sentence entered in the Franklin County Court of Common Pleas, following her jury trial convictions for aggravated assault, conspiracy to commit aggravated assault, simple assault, and riot.[1]  We affirm.

In its opinion, the trial court set forth the relevant facts of this case as follows:

> On March 7, 2021, law enforcement officers responded to reports of a possible fight that occurred in the area of East Washington Street in Chambersburg, Franklin County.  As Fawn Baer (hereinafter "Victim") was being tended to by paramedics she advised law enforcement her ex-boyfriend

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2702(a)(1); 903; 2701(a)(1); and 5501(1), respectively.

[Malcolm Staten ("Malcolm")[2]] and three females were responsible for the injuries she sustained. Four individuals had exited three vehicles on or around 1:35 p.m. and surrounded Victim's car. Victim was pulled from her car and struck on her head and neck while she lay on the ground. Victim testified that she called 911 once she realized the four individuals were trying to open her car. The four persons involved in the incident fled the scene before law enforcement arrived.

Video of the altercation on Washington Street was admitted at trial as Commonwealth's Exhibit 1 (hereinafter "Video"). The Video shows Victim's car is boxed in by three vehicles along Washington Street. Four individuals exit the vehicles and approach the passenger side of Victim's car, away from a clear view of the camera. A commotion can be seen on the far side of Victim's car resulting in Victim's body dropping to the ground. The four individuals re-enter their vehicles and leave the scene once sirens are heard. The four individuals were later identified as [Appellant] and three co-defendants: Shakira Staten, Laketta Staten, and Malcolm Staten (hereinafter collectively referred to as "Co-Defendants" and individually referred to as "Shakira," "Laketta," and "Malcolm").[3]

(Trial Court Opinion, filed 3/6/23, at 2-3) (internal citations omitted).

At trial, Victim testified that on the day of the incident, she was in the car with Asheyla Barbour ("Barbour").[4] Malcolm had knocked on the car window and said he had something for them. Shortly thereafter, Victim and Barbour noticed that Malcolm's cousin, Darius Spoonhour, was driving behind

_____

[2] Victim testified that she and Malcolm had ended their relationship approximately one to two weeks prior to the events at issue.

[3] Laketta and Shakira are Malcolm Staten's half-sisters. Appellant has no familial relationship to the Statens.

[4] Malcolm and Asheyla Barbour have a child together.

- 2 -

them, and boxed in their vehicle. Victim and Barbour were able to drive away. Victim then got a call through the Facebook messenger application from Malcolm's account. Shakira was on the phone threatening to beat up Victim. Next, Barbour received a call from Appellant's Facebook messenger account with Shakira on the line, again threatening to fight Victim and Barbour. A short time later, when Victim and Barbour went to pick up their children at a friend's house, three vehicles boxed in their car. Laketta pulled Victim out of the vehicle and beat her up. Victim recalled seeing a glimpse of the side of Appellant at the scene. Barbour confirmed at trial that Appellant was one of the individuals who assaulted Victim on the day in question. Paul Shives ("Shives"), who witnessed the events at issue, also confirmed that Appellant was involved in the assault.

Procedurally, the jury convicted Appellant of the above-mentioned crimes on June 15, 2022. The court sentenced Appellant on November 9, 2022, to an aggregate term of 54 to 132 months' imprisonment, plus fines in the amount of $650.00. Appellant timely filed a post-sentence motion on Monday, November 21, 2022, which the court denied on March 16, 2023. On Monday, April 17, 2023, Appellant timely filed a notice of appeal. On April 20, 2023, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellant complied on May 10, 2023.

Appellant raises seven issues for our review:

I. Whether the evidence, with respect to aggravated assault, was insufficient to prove that Appellant caused or attempted to cause serious bodily injury?

II. Whether the evidence, with respect to conspiracy to commit aggravated assault, was insufficient to prove that Appellant conspired with another to cause or attempt to cause serious bodily injury?

III. Whether the evidence, with respect to simple assault, was insufficient to prove that Appellant caused or attempted to cause bodily injury?

IV. Whether the evidence, with respect to riot, was insufficient to prove that: (1) Appellant participated with others in a course of disorderly conduct and (2) Appellant intended to commit or facilitate commission of a felony or misdemeanor?

V. Whether the verdict was against the greater weight of the evidence considering the flimsy identification evidence, lack of statement evidence, and lack of physical evidence linking Appellant to the crimes?

VI. Whether the Trial Court abused its discretion when admitting, over objection, Paul Shives' identification testimony?

VII. Whether the Trial Court imposed illegal sentences when it imposed non-mandatory fines without conducting an on-the-record colloquy with respect to Appellant's ability to pay?

(Appellant's Brief at 5).

Appellant's issues one through four challenge the sufficiency of the evidence to sustain her convictions, and we address them together. Appellant argues that she did not make physical contact with Victim. Appellant asserts that the video evidence and Appellant's in-person appearance make clear her petite stature. Appellant claims Victim saw only a quick "flash" of Appellant,

and Victim did not observe Appellant extract her from the vehicle. Appellant suggests she was merely present at the scene. Appellant insists there is no evidence that she attempted to gain entry to Victim's vehicle, made past or immediate threats to Victim, possessed a weapon, or spoke to Victim or Appellant's co-defendants during the scuffle. Appellant emphasizes that no physical evidence connects her to the crimes at issue. Appellant submits that she "was a motorist who stopped her vehicle, exited her vehicle, walked over to the scene of a fresh motor vehicle accident where Appellant encountered a crime in progress involving someone with whom Appellant may have had a casual relationship." (*Id.* at 22). Appellant maintains the evidence was insufficient to establish that she caused or attempted to cause serious bodily injury required to sustain her aggravated assault conviction.

Further, Appellant argues that there is no evidence that she spoke words at any time with the other co-defendants in this case before, on, or after March 7, 2021. Appellant contends she is the only defendant without any familial connection to the co-defendants or Victim. Appellant insists that "[n]o reasonable inference can be drawn regarding the extent to which, if any, Appellant even knows" the co-defendants. (*Id.* at 24). Appellant avers the evidence was insufficient to establish that she agreed with any of the co-defendants to assault Victim and took an overt step in furtherance of that plan.

For similar reasons, Appellant maintains the evidence was also

insufficient to prove she participated with two or more of the co-defendants in a course of disorderly conduct with the intent to commit or facilitate the commission of a felony or misdemeanor. Likewise, Appellant insists the evidence was insufficient to show that she caused or took a substantial step toward causing Victim bodily injury. Appellant concludes the Commonwealth presented insufficient evidence to sustain her convictions, and this Court must vacate her convictions and sentences. We disagree.

In reviewing a challenge to the sufficiency of the evidence, our standard of review is as follows:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the Appellant's convictions will be upheld.

*Commonwealth v. Sebolka*, 205 A.3d 329, 336-37 (Pa.Super. 2019) (quoting *Commonwealth v. Franklin*, 69 A.3d 719, 722-23 (Pa.Super. 2013)).

The Crimes Code defines the offenses at issue in this case as follows:

**§ 2702.  Aggravated assault**

**(a) Offense defined.**—A person is guilty of aggravated assault if [s]he:

(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]

18 Pa.C.S.A. § 2702(a)(1).

**§ 2701.  Simple assault**

**(a) Offense defined.**—Except as provided under section 2702 (relating to aggravated assault), a person is guilty of assault if [s]he:

(1) attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another[.]

18 Pa.C.S.A. § 2701(a)(1).

**§ 903.  Criminal conspiracy**

**(a) Definition of conspiracy.**—A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission [s]he:

(1) agrees with such other person or persons that they or one of more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

\* \* \*

**(e) Overt act.**—No person may be convicted of conspiracy to commit a crime unless an overt act in pursuance of such conspiracy is alleged and proved to have been done by [her] or by a person with whom [s]he conspired.

18 Pa.C.S.A. § 903(a), (e).

### § 5501.  Riot

A person is guilty of riot, a felony of the third degree, if [s]he participates with two or more others in a course of disorderly conduct:

(1) with intent to commit or facilitate the commission of a felony or misdemeanor[.]

18 Pa.C.S.A. § 5501(1).

Regarding aggravated assault, the Code defines "serious bodily injury" as "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301. Simple assault is a lesser-included offense of aggravated assault, so evidence sufficient to prove aggravated assault is sufficient to prove simple assault. *Commonwealth v. Colon*, No. 1952 EDA 2019 (Pa.Super. filed June 15, 2020) (unpublished memorandum).[5]

---

[5] *See* Pa.R.A.P. 126(b) (stating we may rely on unpublished decisions of this Court filed after May 1, 2019 for their persuasive value).

With respect to conspiracy, "[b]ecause it is difficult to prove an explicit or formal agreement to commit an unlawful act, such an act may be proved inferentially by circumstantial evidence, *i.e.*, the relations, conduct or circumstances of the parties or overt acts on the part of the co-conspirators." ***Commonwealth v. Thomas***, 65 A.3d 939, 943 (Pa.Super. 2013) (internal citation omitted). "Circumstantial evidence can include, but is not limited to, the relationship between the parties, the knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode. These factors may coalesce to establish a conspiratorial agreement beyond a reasonable doubt where one factor alone might fail." ***Id.*** (internal citation and quotation marks omitted) (holding Commonwealth presented sufficient evidence to sustain appellant's conviction for conspiracy to commit aggravated assault where appellant and his co-conspirators established unity of criminal purpose; appellant and co-conspirators approached victim as group, beat victim, walked away from scene together, and were arrested together; additionally, all individuals involved in beating of victim were either related to each other or close friends; taking all relevant factors in consideration, these relationships and this sequence of events allowed jury to find beyond reasonable doubt that appellant and his cohorts engaged in criminal conspiracy to commit aggravated assault).

As it pertains to riot, "the proof of group action contemplated is not the common intent to commit a felony or misdemeanor, but rather the actor's

participation with two or more others in a course of disorderly conduct."

***Commonwealth v. Johnson***, 612 A.2d 1382, 1384 (Pa.Super. 1992)

(internal footnote and emphasis omitted). "It has long been held that group

action is the essence of riot." ***Id.*** at 1384 n.1. Further, "[a] person is guilty

of disorderly conduct if, with intent to cause public inconvenience, annoyance

or alarm, or recklessly creating a risk thereof, [s]he: (1) engages in fighting

or threatening, or in violent or tumultuous behavior[.]" 18 Pa.C.S.A. §

5503(a)(1).

Instantly, the trial court evaluated Appellant's sufficiency claims as

follows:

> [Appellant] argues the Commonwealth failed to establish
> she had the requisite intent to attempt to cause serious
> bodily injury to Victim. Barbour testified that "Victim [wa]s
> assaulted by [Appellant] and both of the Staten Sisters" and
> she saw [Appellant] standing over Victim and hitting her.
> Victim testified she saw a "glimpse" or a "flash" of
> [Appellant] before she was pulled out of her car. Shives
> testified [Appellant] was one of three individuals who threw
> Victim "on the ground and was beating on her…slapping her,
> punching her." The Video shows [Appellant's] vehicle
> arriving at the scene of the attack on Victim. [Appellant] is
> identified by Barbour and Shives as one of three women who
> approached Victim's car and hit her while she was on the
> ground. The assault only ended when Co-Defendants heard
> police sirens and left the scene.
>
> Although the record does not indicate that any Co-
> Defendants had a disproportionate size or strength
> advantage over Victim, the fact that the victim was attacked
> by a group supplies the disproportionate force factor. A jury
> could reasonably consider the circumstances of a group
> attack as a factor in deciding that [Appellant] attempted to
> cause serious bodily injury to Victim.

In viewing the evidence in a light most favorable to the Commonwealth, which included Victim being struck by [Appellant] while she lay on the ground and being struck by two other co-defendants, the Commonwealth presented sufficient evidence for the jury to find that [Appellant] intended to cause serious bodily injury to Victim and took a substantial step towards doing so.

* * *

Malcolm's testimony established [Appellant] never had a relationship with him, but was friends with co-defendants Laketta and Shakira. Victim further testified that she never had any previous disagreements with [Appellant], Shakira, or Laketta.

The Commonwealth presented evidence that [Appellant] was present on Washington Street on March 7, 2021 through Victim's, Barbour's, and Shives' testimony. … Barbour testified Shakira made a threatening call to her using [Appellant's] Facebook account. Barbour testified that "they were going to get us. They were going to fight us, beat us up."

The Commonwealth established [Appellant] was the last vehicle to arrive at Victim's vehicle on Washington Street. Upon arrival she is seen on the Video exiting her vehicle, approaching Victim's car and joining in the assault on Victim. Taken in a light most favorable to the Commonwealth, it is reasonable for a jury to conclude that [Appellant] was present on Washington Street through her connection to the female Staten defendants and conclude [Appellant's] actions in furtherance of an assault on Victim are well supported by the record.

* * *

[Appellant] was present **and involved** with the incident on Washington Street. In addition to the incident occurring in broad daylight and in the middle of a borough neighborhood and public street, the incident interfered with the flow of traffic. The Commonwealth's witnesses established that onlookers who observed the incident were worried about the child in the rear seat of Victim's car. The Video showed an

- 11 -

uninvolved motorist had to maneuver around the vehicles that were blocking Victim's car. [Appellant's] involvement in this event, with both her car and her presence in the environment described, meets a level of disrupting peace and dignity in a community and a level of public unruliness which meets the definition of disorderly conduct. Once Victim was blocked in and extracted from the car, an eyewitness accounted for [Appellant's] participation in striking the Victim once she was on the ground.

… Taking the evidence in a light most favorable to the Commonwealth established [Appellant's] participation in a course of activity which constituted disorderly conduct while striking Victim; therefore, her challenge to the sufficiency of the evidence for her Riot conviction fails.

* * *

[Appellant] argues the Commonwealth presented insufficient evidence to prove [Appellant] attempted to cause or intentionally, knowingly, or recklessly caused bodily injury to Victim. As set forth herein, we found, in viewing the evidence in a light most favorable to the Commonwealth, sufficient evidence was presented to support [Appellant's] conviction for Aggravated Assault. We rest upon our reasoning to find the Commonwealth presented sufficient evidence to support [Appellant's] conviction for Simple Assault.

(Trial Court Opinion at 10-16) (internal citations and some quotation marks omitted) (emphasis in original).

The record supports the court's analysis. Viewed in the light most favorable to the Commonwealth as verdict-winner, the evidence was sufficient to sustain Appellant's convictions. **See Sebolka, supra**. **See also** 18 Pa.C.S.A. §§ 2702(a)(1); 2701(a)(1); 903(1); and 5501(1). Therefore, Appellant's issues one through four merit no relief.

In her fifth issue, Appellant argues that the verdict in this case

completely shocks one's conscience, given the contradictory nature of the testimony which casts doubt on Appellant's participation as a principal actor or co-conspirator. Appellant emphasizes that no physical evidence connects Appellant to the crimes. Appellant suggests that Shives and Malcolm only identified Appellant at trial based on her seat at the defense table and previous hearings, "and not through a process of actually recognizing and remembering Appellant as having been present at the crime scene." (Appellant's Brief at 29). Appellant concludes the verdict was against the weight of the evidence, and this Court must award her a new trial. We disagree.

In reviewing a challenge to the weight of the evidence, our standard of review is as follows:

> The weight of the evidence is exclusively for the finder of the fact who is free to believe all, part or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the... verdict if it is so contrary to the evidence as to shock one's sense of justice.
>
> *Commonwealth v. Small*, 559 Pa. 423, [435,] 741 A.2d 666, 672-73 (1999). Moreover, where the trial court has ruled on the weight claim below, an appellant court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Champney*, 574 Pa. 435, 444, 832 A.2d 403, 408 (2003), *cert denied*, 542 U.S. 939, 124 S.Ct. 2906, 159 L.Ed.2d 816 (2004) (most internal citations omitted).

- 13 -

Instantly, the trial court addressed Appellant's weight claim as follows:

[Appellant's] request for a new trial appears to apply to all of her charges; however, [Appellant] has failed to point to evidence that she believes was entitled to greater weight than that assigned by the jury. She simply asserts the verdict was against the weight of the evidence. While we agree there was some conflicting evidence presented at trial we cannot sit as an additional juror. In reviewing the facts, as the jury found them, we find no particular facts so clearly of greater weight that in ignoring them we deny justice to [Appellant]; furthermore, we are not shocked by the verdicts of guilt.

(Trial Court Opinion at 18-19) (internal citation omitted). On this record, we see no abuse of discretion concerning the trial court's ruling on Appellant's weight claim. *See Champney, supra*.

In her sixth issue, Appellant argues that Shives did not have an opportunity to adequately observe Appellant at the time of the crime, as Appellant was the last of the co-defendants to arrive on scene. Appellant claims Shives retreated inside of his home to call 911 and was 1,000 feet away and out of eyeshot of Appellant. Appellant suggests Shives was distracted by the child in Victim's vehicle, and his friend who showed up to the scene bearing a knife. Appellant emphasizes that Shives initially stated "I think it's the lady right there" when identifying Appellant. (Appellant's Brief at 32). Appellant highlights that more than 15 months had passed between when the crimes occurred and the identification at trial. Appellant contends that Shives also misidentified Appellant because he described her at one point in his testimony as a heavy-set woman wearing glasses. Appellant concludes the court erred

by admitting Shives' identification testimony of Appellant, and this Court must grant her a new trial. We disagree.

Preliminarily, regarding the admission of evidence, "it is well-settled that a party must make a timely and specific objection at trial, and the failure to do so results in waiver of that issue on appeal." **Commonwealth v. McGriff**, 160 A.3d 863, 866 (Pa.Super. 2017), *appeal denied*, 644 Pa. 372, 176 A.3d 853 (2017). **See also** Pa.R.E. 103(a) (stating that party may claim error in ruling to admit or exclude evidence only if party challenging admission of evidence makes timely objection and states specific ground, unless it was apparent from context).

Instantly, the Commonwealth claims Appellant waived this issue by failing to object to Shives' identification testimony at trial. As the trial court explained:

> Shives testified [Appellant] was an individual he saw exit a vehicle and approach the Victim's vehicle and made an identification at trial by testifying: "I think it's the lady right there beside the gentleman with the gray blazer on." Defense counsel objected that this testimony was insufficient and Shives further testified "I know, excuse me." The Commonwealth clarified its question to Shives: "The first individual identified (referring to [Appellant]), do you think that was one of the individuals that were there?" to which Shives responded: "I know." We accepted Shives' identification of [Appellant] as sufficient.

(Trial Court Opinion at 6-7) (internal citations omitted).

On this record, we agree with the Commonwealth that Appellant failed to preserve her evidentiary issue for our review. Specifically, following

- 15 -

defense counsel's initial objection to Shives' identification of Appellant, Shives clarified that he was certain that Appellant was the person he saw at the crime scene. (*See* N.T. Trial, 6/10/22, at 10-11). Appellant lodged no further objection. (*See id.*) Thus, Appellant cannot now complain about the court's admission of Shives' identification testimony. *See McGriff, supra*; Pa.R.E. 103(a). Further, Appellant's sole objection was based only on Shives' initial uncertainty in the identification when Shives stated "I think" when identifying Appellant. Appellant did not object to the identification testimony based on any of the other grounds she now raises on appeal.[6] *See id.* Therefore, Appellant's sixth issue on appeal is waived.

In her final issue, Appellant argues the court failed to make a record of Appellant's ability to pay the non-mandatory fines imposed. Although the court noted Appellant's statements during allocution that Appellant has a business, Appellant asserts the court failed to conduct a deeper probe into the nature of Appellant's business, its valuation, and whether the business would become defunct given Appellant's convictions and imminent imprisonment. Appellant emphasizes that she qualified for representation by the Public Defender's Office, which sheds light on the likelihood of Appellant's ability to pay the non-mandatory fines. Appellant concludes the sentence imposed was

---

[6] To the extent Appellant argues the jury should have rejected Shives' identification testimony as incredible, such claim more properly attacks the weight of the evidence, which we have already addressed *supra*.

illegal, and this Court must grant relief. We disagree.

This issue implicates the legality of Appellant's sentence such that "our standard of review…is *de novo* and our scope of review is plenary." ***See Commonwealth v. May***, 271 A.3d 475 (Pa.Super. 2022), *appeal denied*, ___ Pa. ___, 286 A.3d 214 (2022). Regarding the imposition of non-mandatory fines: "The court shall not sentence a defendant to pay a fine unless it appears of record that: (1) the defendant is or will be able to pay the fine; and (2) the fine will not prevent the defendant from making restitution or reparation to the victim of the crime." 42 Pa.C.S.A. § 9726(c).

In support of her claim that the court was required to hold a hearing on her ability to pay, Appellant relies on ***Commonwealth v. Ford***, 655 Pa. 255, 217 A.3d 824 (2019). In that case, our Supreme Court held that the defendant's agreement to pay a specific fine as part of a negotiated plea agreement did not constitute evidence that the defendant would be able to pay the fine. Because no inquiry was made and no record existed as to the defendant's ability to pay the agreed-upon fines, the Court opined that, as a best practice, trial courts should consider whether a defendant is or will be able to pay any negotiated fines before accepting the parties' plea agreement. ***Id.*** at 266-67, 217 A.3d at 830-31. "If the court finds that the defendant cannot afford to pay one or more negotiated fines, then the proposed sentence is illegal and the proposed guilty plea agreement should be rejected." ***Id.*** at 266, 217 A.3d at 831. Thus, the Court concluded the sentence imposed was

illegal when the trial court imposed non-mandatory fines without any evidence that the defendant was (or would be able) to pay them. *See id.*

In response, the Commonwealth cites *Commonwealth v. Boyd*, 73 A.3d 1269 (Pa.Super. 2013) (*en banc*), in which this Court held that a sufficient evidentiary basis exists for the imposition of fines where the court has the benefit of reviewing a pre-sentence investigation ("PSI") report detailing the defendant's employment history and existing assets. *See also Commonwealth v. Baker*, No. 295 MDA 2023 (Pa.Super. filed Dec. 13, 2023) (unpublished memorandum) (distinguishing *Ford* and relying on *Baker* to conclude that court did not impose illegal sentence where it considered appellant's PSI report prior to imposing $2,500.00 fine); *Commonwealth v. Stroud*, No. 881 MDA 2022 (Pa.Super. filed Nov. 21, 2023) (unpublished memorandum) (confirming trial court's conclusion that PSI report provided adequate evidentiary basis for determining that appellant was able to pay imposed fine).

Instantly, the trial court opined:

> At the November 9, 2022 sentencing hearing, [Appellant] testified she has her own business. This was corroborated by the [PSI] Report provided to the [c]ourt in advance of sentencing which noted [Appellant's] work schedule of seven days on; seven days off, with [Appellant] working sixteen hour days. From the record, we determined that [Appellant] is able to pay the aggregate fines totaling six hundred and fifty dollars ($650.00).

(Trial Court Opinion at 20) (internal citation omitted).

We agree with the trial court's analysis. Here, the court had the benefit

of a PSI report detailing Appellant's employment history. ***See Boyd, supra***. Appellant cites no law in support of her claim that the court was required to conduct a "deeper probe" beyond what was provided in the PSI report concerning her ability to pay. Thus, the court's imposition of $650.00 in fines was not illegal under these circumstances. ***See May, supra***. Accordingly, we affirm.

Judgment of sentence affirmed.


Judgment Entered.


Benjamin D. Kohler, Esq.
Prothonotary


Date: 02/01/2024