J-A01003-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| OMAR SHABAZZ | : | |
| | : | |
| Appellant | : | No. 2776 EDA 2022 |

Appeal from the Judgment of Sentence Entered October 17, 2022
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0001518-2021

BEFORE: LAZARUS, P.J., PANELLA, P.J.E., and COLINS, J.[*]

MEMORANDUM BY LAZARUS, P.J.: **FILED FEBRUARY 23, 2024**

Omar Shabazz appeals from the judgment of sentence, entered in the Court of Common Pleas of Montgomery County, following his convictions of one count each of firearms not to be carried without a license,[1] possession with intent to deliver—methamphetamine (PWID—methamphetamine),[2] persons not to possess firearm,[3] two counts of criminal attempt,[4] and three counts of conspiracy.[5] After careful review, we conclude that we are bound

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 6106(a)(1).

[2] 35 P.S. § 780-113(a)(30).

[3] 18 Pa.C.S.A. § 6105(a)(1).

[4] *Id.* at § 901(a).

[5] *Id.* at § 903(a).

by **Commonwealth v. Lear**, 290 A.3d 709 (Pa. Super. 2023), and remand for an evidentiary hearing pursuant to Pa.R.Crim.P. 600(D).

In light of our disposition, a detailed recitation of facts is unnecessary. In summary, the Montgomery County Detective Bureau and the Pottstown Borough Police Department were investigating an individual named Andrew Pignoli. During the course of the investigation, Detective Cameron Parker of the Montgomery County Detective Bureau began acting in an undercover capacity and began exchanging text messages and phone calls with Pignoli. Pignoli agreed to sell Detective Parker two ounces of methamphetamine in exchange for $1,000 and a firearm. At this point, Shabazz became involved and told Detective Parker that he also wanted additional ammunition for the firearm. Detective Parker agreed, and Shabazz informed him that Pignoli would be contacting Detective Parker to coordinate the sale.

On October 7, 2020, Detective Parker met with Pignoli and Shabazz to exchange the two ounces of methamphetamine for $1,000 and a firearm, as well as additional ammunition. Police arrested Shabazz as a result of this exchange, recovered a different firearm on Shabazz's person, and discovered additional methamphetamine in his vehicle. Shabazz was charged, via criminal complaint, on October 8, 2020.[6]

---

[6] As we discuss in detail **infra**, Shabazz was arrested during the suspension of Rule 600 by the Montgomery County Court of Common Pleas pursuant to various COVID-19 emergency orders.

- 2 -

On April 12, 2022, Shabazz filed a motion to dismiss pursuant to Rule 600. On May 10, 2022, Shabazz filed a motion to compel identity of informant and, on May 12, 2022, filed a motion to suppress the evidence seized from his person and his vehicle. On June 6, 2022, the trial court conducted a consolidated pre-trial hearing. On June 7, 2022, the trial court denied the three motions. In particular, the trial court determined that Shabazz's Rule 600 mechanical run date did not begin on October 8, 2020, when Shabazz was charged. Rather, the trial court concluded that Shabazz's mechanical run date was calculated from August 31, 2021, when the Montgomery County Court of Common Pleas' COVID-19 emergency orders expired. *See* Trial Court Opinion, 6/29/23, at 8-10. As a result, the trial court concluded that Shabazz's mechanical run date was August 31, 2022, denied Shabazz's Rule 600 motion as premature, and did not conduct an analysis of whether the Commonwealth had acted with due diligence. *See id.*

On June 13-14, 2022, the trial court held a bifurcated jury trial on the above-mentioned PWID—methamphetamine offense, the firearms not to be carried without a license offenses, two of the conspiracy offenses, and one of the criminal attempt offenses.[7] The remaining charges were heard by the trial court, sitting without a jury.

---

[7] Two of Shabazz's conspiracy offenses were related to the PWID—methamphetamine and firearms not to be carried without a license charges. One of Shabazz's criminal attempt offenses was related to the PWID—methamphetamine charge.

At trial, the jury found Shabazz guilty of the above-mentioned PWID—methamphetamine, firearms not to be carried without a license, and related offenses. The trial court subsequently found Shabazz guilty of the remaining offenses. The trial court deferred sentencing and ordered the preparation of a pre-sentence investigation report.

On October 17, 2022, the trial court imposed an aggregate sentence of 78 to 156 months in prison. Shabazz did not file post-sentence motions.[8]

On October 27, 2022, Shabazz filed a timely notice of appeal. On that same date, Shabazz's trial counsel filed a motion to withdraw. The trial court granted the motion to withdraw and appointed new appellate counsel. The

_____

[8] We observe that on October 31, 2022, the trial court filed an amended sentencing order. *See* Order, 10/31/22. Additionally, on November 1, 2022, the trial court filed an "Order Modifying Sentence." *See* Order Modifying Sentence, 11/1/22, at 1-2. Both orders are identical and state that a scrivener's error failed to denote that Shabazz's conviction of firearms not to be carried without a license was to run concurrently with his sentence for persons not to possess firearms. *See id.*; *see also* N.T. Sentencing Hearing, 10/17/22, at 11 (trial court stating that Shabazz's conviction of firearms not to be carried without a license was to run concurrently with his sentence for his conviction of persons not to possess firearms).

We observe that trial courts generally do not have jurisdiction to modify a judgment of sentence after a notice of appeal has been filed; however, our Supreme Court has recognized that a trial court's inherent authority to correct a patent error is not limited by the fact that an appeal is pending before the appellate court. *See Commonwealth v. Holmes*, 933 A.2d 57, 65 (Pa. 2007); *see also* 42 Pa.C.S.A. § 5505. Instantly, as summarized above, the trial court modified the sentencing order to correct a scrivener's error. Consequently, we conclude that the trial court properly exercised its authority to correct a patent error in the judgment of sentence, and it does not impede our review. *See Holmes*, *supra*.

- 4 -

trial court further ordered that Shabazz file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. However, appellate counsel filed a Pa.R.A.P. 1925(c)(4) notice of intent to file a brief pursuant to **Anders**.[9] Consequently, the trial court did not file a Rule 1925(a) opinion.

During the pendency of Shabazz's appeal, and prior to counsel's filing of an **Anders** brief, this Court decided **Commonwealth v. Lear**, 290 A.3d 709 (Pa. Super. 2023).[10] In **Lear**, this Court concluded that the Montgomery County Court of Common Pleas COVID-19 emergency orders categorized the suspension of Rule 600 as court postponements. **See id.** at 719-20. Consequently, under **Commonwealth v. Harth**, 252 A.3d 600 (Pa. 2021), the trial court was required to analyze whether the Commonwealth had acted with due diligence during those court postponements. **See Lear**, 290 A.3d at 719-20.

As a result of our decision in **Lear**, Shabazz's appellate counsel filed an Application for Remand on April 30, 2023, in which counsel requested that the case be remanded for the preparation and filing of a *nunc pro tunc* Rule 1925(b) concise statement preserving Shabazz's Rule 600 claim for appeal. **See** Application for Remand, 4/30/23, at 1-3. This Court granted the

_____

[9] **Anders v. California**, 368 U.S. 738 (1967); **Commonwealth v. McClendon**, 434 A.2d 1185 (Pa. 1981); **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).

[10] On October 3, 2023, our Supreme Court granted review of this Court's decision in **Lear**. **See Commonwealth v. Lear**, 305 A.3d 541 (Pa. 2023) (Table).

Application for Remand, remanded the matter to the trial court for the preparation and filing of a *nunc pro tunc* Rule 1925(b) concise statement followed by a responsive Rule 1925(a) opinion. *See* Order, 6/6/23. On June 22, 2023, Shabazz filed the *nunc pro tunc* Rule 1925(b) concise statement, and on June 29, 2023, the trial court filed its responsive Rule 1925(a) opinion.

Shabazz now raises the following claims for our review:

1. Did the trial court err in finding the emergency orders related to the COVID-19 emergency constituted a suspension of Rule 600, as opposed to court-postponement for the purposes of Rule 600?

2. Did the trial court err in failing to analyze whether the Commonwealth exercised due diligence for the purposes of Rule 600?

Brief for Appellant, at 4.

We address Shabazz's claims together, as they are both related, and answered by this Court's precedential decision in *Lear*. Shabazz contends that the trial court improperly denied his Rule 600 motion as premature because, under the language of Montgomery County's COVID-19 emergency orders, his mechanical run date should have been calculated as October 8, 2021, or one year after he was arrested and charged on October 8, 2020. *See id.* at 11-13. Shabazz further asserts that the trial court was required, under *Lear* and *Harth*, to analyze whether the Commonwealth acted with due diligence at all times during the court postponements. *See id.*

The Commonwealth argues that the trial court properly excluded the time set forth in Montgomery County's COVID-19 emergency orders. *See* Commonwealth's Brief, at 10-15. The Commonwealth contends that this

Court's decision in **Lear** misinterpreted the Montgomery County COVID-19 emergency orders. **See id.** However, the Commonwealth acknowledges that we are bound by the **Lear** decision. **See id.** at 15 (citing **Commonwealth v. Pepe**, 897 A.2d 463, 465 (Pa. Super. 2006) ("It is beyond the power of a Superior Court panel to overrule a prior decision of the Superior Court[.]")). Consequently, the Commonwealth concedes that, under **Lear**, remand for a Rule 600 hearing is necessary.

"In evaluating Rule 600 issues, our standard of review . . . is whether the trial court abused its discretion." **Commonwealth v. Hunt**, 858 A.2d 1234, 1238 (Pa. Super. 2004) (en banc).

> The proper scope of review . . . is limited to the evidence on the record of the Rule 600 evidentiary hearing, and the findings of the trial court. An appellate court must view the facts in the light most favorable to the prevailing party.
>
> Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule 600. Rule 600 serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of Rule 600 was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.
>
> * * *
>
> So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule 600 must be

> construed in a manner consistent with society's right to punish and deter crime.

*Id.* at 1238-39 (internal citations and quotation marks omitted).

Rule 600 provides, in relevant part, as follows:

**(A) Commencement of Trial; Time for Trial**

* * *

> (2) Trial shall commence within the following time periods.
>
> > (a) Trial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed.

Pa.R.Crim.P. 600(A)(2)(a). "Rule 600 generally requires the Commonwealth to bring a defendant . . . to trial within 365 days of the date the complaint was filed." *Hunt*, 858 A.2d at 1240. To obtain relief, a defendant must have a valid Rule 600 claim at the time he files his motion for relief. *Id.* at 1243.

"The mechanical run date is the date by which the trial must commence under Rule 600." *Commonwealth v. McNear*, 852 A.2d 401, 406 (Pa. Super. 2004).

> It is calculated by adding 365 days (the time for commencing trial under Rule 600) to the date on which the criminal complaint is filed. The mechanical run date can be modified or extended by adding to the date any periods of time in which delay is caused by the defendant. Once the mechanical run date is modified accordingly, it then becomes an adjusted run date.

*Id.*

In determining whether any time constitutes excludable delay under Rule 600, a trial court must determine whether the time is a "delay in

- 8 -

proceedings," and whether the delay should be excluded based on an analysis of the Commonwealth's due diligence. ***Commonwealth v. Mills***, 162 A.3d 323, 325 (Pa. 2017). Time that is "necessary to ordinary trial preparation" or "attributable to the normal progression of a case simply is not a 'delay' for the purposes of [R]ule 600." ***Id.*** If time is a "delay," it is excludable when it falls under the "wide variety of circumstances [encompassed by Rule 600] under which a period of delay was outside the control of the Commonwealth and not the result of the Commonwealth's lack of diligence." ***Commonwealth v. Armstrong***, 74 A.3d 228, 236 (Pa. Super. 2013) (citations and quotation marks omitted).

"A Rule 600 motion requires a showing of due diligence by a preponderance of the evidence for the Commonwealth to avail itself of an exclusion." ***Commonwealth v. Selenski***, 994 A.2d 1083, 1089 (Pa. 2010) (citation omitted). "Due diligence is fact-specific, to be determined case-by-case; it does not require perfect vigilance and punctilious care, but merely a showing the Commonwealth has put forth a reasonable effort." ***Id.*** Reasonable effort includes such actions as the Commonwealth listing the case for trial prior to the run date to ensure that the defendant was brought to trial within the time prescribed by Rule 600. ***See Commonwealth v. Aaron***, 804 A.2d 39, 43-44 (Pa. Super. 2002); ***Commonwealth v. Hill***, 736 A.2d 578, 592 (Pa. 1999).

Trial courts "must exercise judgment in distinguishing between delay attributable to the court and that which should be allocated to a party." **Mills**, 162 A.3d at 325. Judicial delays "arising out of the court's own scheduling concerns . . . where a trial[-]ready prosecutor must wait several months due to a court calendar . . . should be treated as 'delay' for which the Commonwealth is not accountable." **Id.** Nevertheless, the Commonwealth must act diligently through all stages of a case, and its due diligence must be assessed before determinations regarding judicial delay. **See Harth**, 252 A.3d at 617-18 (adopting Justice Wecht's concurrence in **Mills**).

Relevantly, in **Lear**, this Court stated as follows:

If an order unambiguously suspends Rule 600 without qualification, then the period of the suspension is added to the run date without considering the Commonwealth's [due] diligence. [**See Commonwealth v. Carl**, 276 A.3d 743, 751 (Pa. Super. 2022)]. Alternatively, if an order characterizes a delay as a court postponement, then that period is only excluded if the trial court determines after a hearing that the Commonwealth exercised due diligence through the life of the case. [**See Harth**, 252 A.3d at 618].

The relevant local emergency orders are as follows. On March 16, 2020, Montgomery County declared a judicial emergency and ordered that the operation of Rule 600 would be suspended "during the period of the local judicial emergency." Declaration, 3/16/20. On March 31, 2020, Montgomery County extended the judicial emergency to April 30, 2020, again ordering Rule 600 to be suspended. Declaration[,] 3/31/20. On April 14, 2020, Montgomery County extended the judicial emergency to May 31, 2020.

On May 5, 2020, Montgomery County entered an order rescinding its previous orders effective May 31, 2020. Order, 5/5/20, at 1. . . .

- 10 -

On May 28, 2020, Montgomery County declared that the local judicial emergency would be extended "until further Order of Court." Declaration, 5/28/20. It ordered that its declaration included the provisions of the order from May 5, 2020. *Id.*

On June 3, 2020, Montgomery County ordered "**that any postponement of criminal case scheduling caused by the declaration of this judicial emergency, from March 12, 2020 through the expiration of the judicial emergency, shall be considered a court postponement and shall constitute excludable time for purposes of the application of Rule** [] **600**." Order, 6/3/20. This lasted until August 31, 2021. *See* Order, 8/30/21.

*Id.* at 719-20 (emphasis added).

Instantly, the trial court addressed this claim as follows:

[B]eginning in March of 2020, the Pennsylvania Supreme Court issued emergency orders suspending Rule 600 statewide through June 1, 2020. *See In re General Statewide Judicial Emergency*, 228 A.3d 1283, 1287 (Pa. [] 2020); *In re General Statewide Judicial Emergency*, 230 A.3d 1015, 1019 (Pa. [] 2020). When the statewide judicial emergency ended, the Court expressly empowered each judicial district's president judge to enter self-effectuating declarations of judicial emergency, which could "[s]uspend statewide rules pertaining to the rule-based right of criminal defendants to a prompt trial." *In re General Statewide Judicial Emergency*, 234 A.3d 408 (Pa. [] 2020)[.]

In light of the Supreme Court's orders, on March 16, 2020, President Judge Thomas M. DelRicci of the Montgomery County Court of Common Pleas declared a judicial emergency, noting, amongst other things, that effective immediately and until further notice, all jury and non-jury trials were cancelled. *See* Judicial Emergency Order, 3/16/20. On that same date, P.J. DelRicci also issued a declaration which explicitly suspended the operation of Rule 600 from March 12, 2020 through April 14, 2020. *See* Declaration, 3/16/20. On March 31, 2020, P.J. DelRicci extended the judicial emergency through April 30, 2020. The Declaration stated, "[t]he operation of Rule [] 600 shall be suspended in the 38th Judicial District during the period of the local judicial emergency." *See* Declaration, 3/31/20. On April 14, 2020, P.J. DelRicci extended the judicial emergency to May 31[,] 2020.

Th[at] Declaration stated, "**[a]ny postponement of criminal case scheduling caused by the declaration of this judicial emergency shall be considered a court postponement and shall constitute excludable time for the purposes of the application of Rule [] 600**." *See* Declaration, 4/14/20. On May 28, 2020, P.J. DelRicci declared that the local judicial emergency would be extended "until further order of court." *See* Declaration, 5/28/20. On June 3, 2020, P.J. DelRicci ordered "that any postponement of criminal scheduling caused by the declaration of this judicial emergency, from March 12, 2020 through the expiration of the judicial emergency, **shall be considered a court postponement and shall constitute excludable time for purposes of the application of Rule [] 600**." *See* Order 6/30/20.

On June 21, 2021, the Pennsylvania Supreme Court ordered that Pennsylvania courts would return to pre-pandemic status effective July 6, 2021. . . . On August 30, 2021, P.J. DelRicci issued an Order vacating . . . his June 30, 2020 Order. . . . *See* Order, 8/30/21.

Here, on October 8, 2020, the Pottstown Borough Police Department filed a criminal complaint with respect to [Shabazz] and his trial commenced on June 13, 2022. Thus, the time between the filing of the complaint and [Shabazz]'s trial was 613 days. The criminal complaint was filed during the time period when Montgomery County was operating under a judicial emergency. On October 15, 2020, [Shabazz]'s preliminary hearing was continued by request of the Magisterial District Court. On December 3 and 10, 2020, [Shabazz]'s preliminary hearing was continued by request of the defense. On January 21, 2021, [Shabazz]'s preliminary hearing took place and all charges were held for the Court of Common Pleas. On June 22, 2021, [Shabazz] entered a not guilty plea during his formal arraignment. On that same date, the Commonwealth filed the bills of information in this matter.

On April 21, 2022, following the first and only pre-trial conference in this matter, the [trial] court moved the case to the call of the trial list scheduled for April 27, 2022. During the call of the trial list on April 27, 2022, the [trial] court scheduled a jury trial to commence on June 8, 2022. On June 6, 2022, the [trial] court held the Rule 600 hearing. Due to a scheduling conflict, the [trial] court issued an order on June 8, 2022, which continued the jury

- 12 -

trial to June 13, 2022. Except for [Shabazz]'s requests for continuances of the preliminary hearings scheduled for December 3 and 10, 2020, neither party requested any continuances during the pendency of this matter. The Commonwealth never indicated it was not prepared to proceed to trial at any point following its filing of the bills of information.

During the Rule 600 hearing on June 6, 2022, the *Lear* decision had not been issued and the [trial] court was operating under the belief that P.J. DelRicci had unambiguously suspended Rule 600 without qualification for the time period [between] March 12, 2020 through August 31, 2021. Consequently, the [trial] court had reason to conclude that the time period from the filing of the criminal complaint on October 8, 2020 to August 31, 2021 constituted excludable time in which an examination of the Commonwealth's exercise of due diligence was not required. Further, this conclusion caused the [trial] court to utilize September 1, 2021 as the starting time for the mechanical run date calculation, which resulted in a mechanical run date of September 1, 2022, prior to any adjustments. Considering the trial was going to commence well in advance of the September 1, 2022 date, the [trial] court viewed [Shabazz]'s Rule 600 motion as premature and denied it without the development of an evidentiary record regarding the Commonwealth's exercise of due diligence.

The *Lear* holding would effectively change the starting time for the mechanical run date calculation to the filing of the complaint on October 8, 2020, which would result in a mechanical run date of October 8, 2021[,] prior to any adjustments. Thus, the June 13-14, 2022 [bifurcated] trial occurred well after the mechanical run date. . . . In the event the holding in *Lear* is upheld by the Pennsylvania Supreme Court, this court concedes that this matter would likely need to be remanded for a hearing pursuant to [Rule] 600[] in order to determine whether the Commonwealth exercised due diligence throughout the life of this case. The [trial] court notes, however, that due to the judicial emergency and prohibition on jury trials for an extended period of time, the Montgomery County Court of Common Pleas was left with a significant backlog of cases which continues to severely impair its ability to schedule cases prior to any imminent Rule 600 deadlines. The backlog resulted in this matter not being scheduled for a pre-trial conference for nearly one year following [Shabazz]'s formal

arraignment and impaired the court's ability to schedule this matter for trial prior to October 8, 2021.

Trial Court Opinion, 6/29/23, at 6-11 (emphasis added, some citations omitted).

After review, we agree with the trial court's conclusion that Shabazz's mechanical run date was October 8, 2021. *See id.* at 10-11. Further, we are bound by the *Lear* Court's determination that Montgomery County's COVID-19 emergency orders constituted court postponements. *See Lear*, *supra*. Therefore, as the trial court did not analyze whether the Commonwealth acted with the requisite due diligence, we are constrained to remand for the trial court to conduct a hearing pursuant to Rule 600(D).[11] *See Lear*, *supra*; *Commonwealth v. May*, 271 A.3d 475, 482 (Pa. Super. 2022) ("This panel is bound by existing precedent and, therefore, lacks the authority to overturn another panel decision.") (citation omitted). If the trial court determines, after the hearing, that the Commonwealth did not meet its burden to show due diligence, then it should vacate Shabazz's judgment of sentence and his convictions, dismiss the charges, and discharge Shabazz. However, if the trial court determines that the Commonwealth exercised due diligence, then it

_____

[11] We appreciate the trial court's candor and the difficulties trial courts have had navigating Rule 600 during, and in the aftermath of, the pandemic. Nevertheless, we are bound by the precedential decision announced by this Court in *Lear*, and we are constrained to conclude that the trial court was required to analyze whether the Commonwealth acted with the requisite due diligence. *See Lear*, *supra*. As we emphasized in *Lear*, P.J. DelRicci's orders expressly noted that the Rule 600 suspensions were to qualify as **court postponements**. *See* Trial Court Opinion, 6/29/23, at 6-8; *see also Lear*, *supra*; *Mills*, *supra*.

- 14 -

should deny Shabazz's motion to dismiss; Shabazz's judgment of sentence would remain extant, and Shabazz would be able to appeal the Rule 600 determination.

Case remanded for Rule 600(D) hearing. Jurisdiction Relinquished.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: _2/23/2024_