J-S40026-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ZYWON SAEED WARREN | : | |
| | : | |
| Appellant | : | No. 64 MDA 2025 |

Appeal from the Judgment of Sentence Entered December 11, 2024
In the Court of Common Pleas of York County
Criminal Division at No(s):  CP-67-CR-0005241-2022

BEFORE:  LAZARUS, P.J., PANELLA, P.J.E., and MURRAY, J.

MEMORANDUM BY PANELLA, P.J.E.:　　　　　**FILED: DECEMBER 31, 2025**

Zywon Saeed Warren appeals from the judgment of sentence entered in the Court of Common Pleas of York County after a jury convicted him of persons not to possess a firearm and carrying a firearm without a license.[1] On appeal, Warren challenges the sufficiency of the evidence to sustain his convictions and the constitutionality of Sections 6105 and 6106. After careful review, we affirm.

The trial court accurately summarized the facts underlying Warren's convictions, based on the evidence presented at trial, as follows:

> On June 25, 2021, around midnight, Sergeant Zachary Martz [ ] of [the] West Manchester Police Department, observed a vehicle driving eastbound on Route 30 with license plate lights that were burned out. [Seargeant Martz] pulled out onto Route 30 to pursue the vehicle and then observed the driver switching lanes multiple

_____

[1] 18 Pa.C.S.A. §§ 6105(a)(1) and 6106(a)(1), respectively.

times. Upon approaching the vehicle, [Seargeant Martz] ran the registration prior to initiating the traffic stop, which [indicated that] the vehicle belonged to a Savion Harrison[, who had] an active warrant. As [Seargeant Martz] continued following the vehicle, the driver abruptly began changing between multiple lanes and then headed southbound on Pennsylvania Avenue. At that time, [Seargeant Martz] initiated a traffic stop of the vehicle and called for back-up from other officers. As [Seargeant Martz] approached the vehicle, he observed that there were multiple occupants inside the vehicle and could smell a faint odor of burnt marijuana emanating from the vehicle. [Seargeant Martz] identified the driver as Savion Harrison. The rear seat passenger was identified as Jason Wilson, and the front seat passenger was identified as [Warren]. [Warren] amicably provided his name and date of birth to allow [Seargeant Martz] to identify him.

When [a backup officer] arrived on scene, [Seargeant Martz] requested that the driver exit the vehicle for further discussion. The driver was visibly shaking. [Seargeant Martz] requested permission to search the vehicle. The driver declined consent to search. [Seargeant Martz] then called for a K-9 unit to respond to the traffic stop location and perform a search of the vehicle. Prior to the K-9 officer's arrival, [Seargeant Martz] then requested that the remaining occupants exit the vehicle. After a brief time, [Seargeant Martz] released the passenger occupants of the vehicle, including [Warren], who exited the scene. Then Officer [Derek] Smith, [of the] Southern Regional Police Department, arrived on scene with his K-9 partner. The K-9 circled the vehicle and positively alerted to the presence of narcotics. After the positive alert, [Seargeant Martz] impounded the vehicle.

Following the traffic stop and subsequent impounding of the vehicle, [Seargeant Martz] applied for a search warrant for the vehicle, which was granted. [Seargeant Martz], along with Lieutenant Emig, then executed the search warrant of the vehicle. A loaded Springfield firearm was recovered under the driver's seat. A bookbag was recovered on the rear passenger seat, which contained three pairs of moving gloves and a fanny pack with loose marijuana[, ] clear plastic baggies of marijuana[,] and cigar rolling papers inside. A loaded Smith & Wesson firearm, a digital scale, and two baggies of cocaine were recovered under the passenger side seat—where [Warren] was seated. Each baggie of cocaine was weighed during the lab testing; the first baggie weighed 51.64 grams, and the second baggie recovered weighed

- 2 -

2.66 grams. At the conclusion of the search of the vehicle, the firearms were sent to the Pennsylvania State Police Lab to be swabbed for DNA.

Later, Detective DeWitt applied for and obtained a search warrant for a buccal swab of [Warren]. This buccal swab was also sent to the Pennsylvania State Police Lab to compare to the samples recovered from the firearms. Taylor Richart, [of the] Pennsylvania State Police[] Forensic DNA Division, received the DNA submissions in this case—the firearms and [Warren's] DNA. After analyzing the DNA results from the Smith & Wesson firearm, Richart was able to obtain a partial profile that contained three individual DNA contributors on the firearm. According to Richart, the third contributor was a "trace contributor" and therefore no analysis could be provided. [N.T. Jury Trial, 10/3/24, at 194.] The number one contributor was observed to have contributed to 57% and the number two contributor was observed to have contributed to 32% of the recovered DNA. The DNA profile found on the Smith & Wesson firearm was consistent with [Warren's] profile[.] Richart further explained that [Warren's] profile was consistent with the number two contributor, which contributed to 32% of the recovered DNA.

Trial Court Opinion, 3/11/25, at 1-4 (record citations omitted).

On November 16, 2021, Warren was charged with one count each of persons no to possess a firearm, carrying a firearm without a license, possession with intent to deliver a controlled substance ("PWID"),[2] criminal

---

[2] 35 P.S. § 780-113(a)(30).

conspiracy—PWID,[3] intentional possession of a controlled substance,[4] criminal conspiracy—intentional possession,[5] and possession of drug paraphernalia.[6]

On June 15, 2023, Warren filed a counseled motion to dismiss the charge of persons not to possess a firearm. In his motion, Warren conceded that his prior corruption of minors[7] conviction prohibited him from possessing a firearm pursuant to 18 Pa.C.S.A. § 6105(b) and that his prior PWID—marijuana[8] conviction prohibited him from possessing a firearm under 18 Pa.C.S.A. § 6105(c)(2). **See** Motion to Dismiss, 6/15/23, at ¶¶ 6-8. However, Warren alleged that prosecution of his Section 6105 charge would violate his Second Amendment right to bear arms because he "has never been convicted of a crime of violence and is not disallowed from possessing a firearm for any other reason" than his prior convictions. **Id.** at ¶ 10. The Commonwealth filed a motion in opposition in which it argued that "disarming fugitives falls squarely within the established tradition of disarming groups based on status[,]" and therefore, the "historical analogue for disarming fugitives is

---

[3] 18 Pa.C.S.A. § 903(a)(1)—35 P.S. § 780-113(a)(30).

[4] 35 P.S. § 780-113(a)(16).

[5] 18 Pa.C.S.A. § 903(a)(1)—35 P.S. § 780-113(a)(16).

[6] 35 P.S. § 780-113(a)(32).

[7] 18 Pa.C.S.A. 6301(a)(1)(i).

[8] 35 P.S. 780-113(a)(30).

clear" and supports its assertion that Section 6105 is constitutional as applied to Warren. Memorandum in Opposition, 9/22/23, at 3.

Warren's motion to dismiss was joined with those filed on behalf of other similarly situated defendants charged under Section 6105 where the basis of the firearm prohibition was an underlying felony drug offense. *See* Scheduling Order, 9/7/23. On October 31, 2023, an *en banc* panel of York County Court of Common Pleas judges issued an order and opinion denying the motions. Notably, the panel rejected the defendants' contention that PWID is a non-violent felony and instead determined that "the nature of drug dealing is inherently dangerous and violent." Order and Opinion, 11/1/23, at 7.

Warren's case proceeded to a jury trial at which he was convicted of persons not to possess a firearm and carrying a firearm without a license and acquitted of all other offenses. On December 11, 2024, the trial court sentenced Warren to 5 to 10 years' incarceration for his persons not to possess a firearm conviction and a concurrent sentence of 3 to 6 years for carrying a firearm without a license. On January 9, 2025, Warren filed a notice of appeal from his judgment of sentence. Both Warren and the trial court have complied with Pa.R.A.P. 1925. *See* Pa.R.A.P. 1925(a), (b).

On appeal, Warren presents the following questions for our review:

I.    Was there insufficient evidence to support the guilty verdict for person not to possess a firearm and firearm not to be carried without a license because there was no evidence that [Warren] possessed or controlled a firearm in a vehicle where the Commonwealth failed to show that [Warren] had knowledge of the

firearm's existence or that he had both the intent and power to control the firearm?

II. Did the court err in refusing to dismiss [Warren's] charge under § 6105(a)(1) for violating the United States Constitution where the statute regulates conduct protected by the Second Amendment and the Commonwealth failed to establish that this restriction is consistent with this Nation's history of firearm regulation?

III. Is the vehicle component of § 6101 of the Pennsylvania Crimes Code—as it relates to § 6106(a)(1), the provision under which [Warren] was convicted—facially unconstitutional under

a. the Second Amendment of the United States Constitution?

b. Article I, Section 21 of the Pennsylvania Constitution, which provides greater protection of the right to keep and bear arms than does the Second Amendment?

Appellant's Brief, at 4 (formatting altered; unnecessary capitalization and suggested answers omitted).

In his first issue, Warren challenges the sufficiency of the evidence to sustain his convictions. "Because evidentiary sufficiency is a question of law, our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Johnson*, 236 A.3d 1141, 1152 (Pa. Super. 2020) (*en banc*) (citation omitted).

When reviewing a challenge to the sufficiency of the evidence, we must determine whether, when viewed in the light most favorable to the Commonwealth as the verdict winner, the evidence presented at trial and all reasonable inferences derived from the evidence was sufficient to establish [each element] of the offense beyond a reasonable doubt. The Commonwealth may sustain its burden entirely by circumstantial evidence. Moreover, the jury, which passes upon the weight and credibility of each witness's testimony, is free to believe all, part or none of the evidence.

***Commonwealth v. McIntyre***, 333 A.3d 417, 432 (Pa. Super. 2025) (citations omitted). "Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." ***Commonwealth v. Mead***, 326 A.3d 1006, 1012 (Pa. Super. 2024) (citation omitted).

Warren avers that the Commonwealth's evidence was insufficient as a matter of law to support his convictions of persons not to possess a firearm and carrying a firearm without a license "because there was no evidence that [he] possessed or controlled a firearm." Appellant's Brief, at 11. Specifically, Warren contends that the evidence failed to prove that he "had knowledge of the firearm's existence" or that he "had both the intent and power to control the firearm." ***Id.***

To sustain a conviction for persons not to possess a firearm under Section 6105(a)(1), "the Commonwealth must prove beyond a reasonable doubt that the defendant [(1)] possessed a firearm and [(2) was previously] convicted of an enumerated offense that prohibits him from possessing … a firearm." ***Commonwealth v. Batty***, 169 A.3d 70, 76 (Pa. Super. 2017) (citation omitted). To sustain a conviction for carrying a firearm without a license under Section 6106(a)(1), the Commonwealth must prove that the defendant "intentionally, knowingly, or recklessly carried a firearm in a vehicle or concealed on or about his person outside his home or place of business

without a valid and lawfully issued license." **Mead**, 326 A.3d at 1013 (citations omitted). Accordingly, the Commonwealth must establish the element of possession to convict a defendant of carrying a firearm without a license. **See Commonwealth v. Muhammad**, 289 A.3d 1078, 1090 (Pa. Super. 2023).

The sole element Warren disputes in his sufficiency challenge is possession of the Smith & Wesson firearm. The Commonwealth can establish the element of possession by proving actual or constructive possession. **See McIntyre**, 333 A.3d at 432. Because the firearm at issue was not recovered from Warren's person, but rather from under the vehicle's passenger seat, "the concept of constructive possession applies." **Muhammad**, 289 A.3d at 1091.

> When there is no direct evidence [that] the person was in physical possession of the firearm, the Commonwealth must prove the element of possession through what has been described as the legal fiction of constructive possession. This Court has stated that a defendant has constructive possession of contraband if he has conscious dominion of it, that is, he has the power to control the contraband and the intent to exercise that control. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not, and may be established by the totality of the circumstances[.]

**McIntyre**, 333 A.3d at 432 (citations, quotation marks, and brackets omitted). "[A]s with any other element of a crime, constructive possession may be proven by circumstantial evidence." **Muhammad**, 289 A.3d at 1091 (citation omitted).

> A defendant's mere presence at a place where contraband is found or secreted is insufficient, standing alone, to prove that he exercised dominion and control over those items. Thus, the

- 8 -

location and proximity of an actor to the contraband alone is not conclusive of guilt. Rather, knowledge of the existence and location of the contraband is a necessary prerequisite to proving the defendant's intent to control, and, thus, his constructive possession.

If the only inference that the fact finder can make from the facts is a suspicion of possession, the Commonwealth has failed to prove constructive possession. It is well settled that facts giving rise to mere association, suspicion[,] or conjecture[] will not make out a case of constructive possession.

***Commonwealth v. Wright***, 255 A.3d 542, 553 (Pa. Super. 2021) (quotation marks, brackets, and citations omitted).

At trial, Sergeant Martz testified that after he initiated the traffic stop and approached the vehicle, he observed that Harrison, the driver and registered owner of the vehicle, was acting nervously and that Warren was the front seat passenger. *See* N.T. Jury Trial, 10/3/24, at 101, 103-104. Sergeant Martz testified that the occupants of the vehicle stepped out upon his request and that, when asked, Warren indicated there was nothing in the vehicle that Sergeant Martz needed to worry about. *See id.* at 111. Upon impounding the vehicle and executing the search warrant, Sergeant Martz located, *inter alia*, a Smith & Wesson firearm, with its grip facing toward the front of the vehicle and its barrel facing toward the passenger door, a digital scale, and two bags of cocaine under the passenger seat, where Warren had been seated. *See id.* at 117-18, 123.

Taylor Richart, who was qualified as an expert in forensic examination of DNA evidence, testified that the DNA profile obtained from the firearm was

a mixture of three individuals that "had DNA that was consistent with" Warren's DNA profile. *Id.* at 196. She further testified that it was "110,000 times more likely" that the DNA was "from [Warren] and two unidentified individuals than [from] three unidentified individuals." *Id.* at 197. Richart concluded that Warren could "be included as a potential contributor" to the DNA mixture obtained from the firearm, while Harrison, the owner and operator of the vehicle, could "be excluded as a contributor to the profile." *Id.* at 200.

Viewing this evidence in the light most favorable to the Commonwealth, we conclude that the Commonwealth adduced sufficient evidence from which the jury could reasonably infer that Warren had the requisite power and intent to control the firearm based on his proximity to its location in the vehicle and the presence of DNA consistent with his DNA profile on the firearm itself. While we acknowledge that Warren was neither the owner of the vehicle nor its sole occupant, "[t]he fact that another person may also have control and access does not eliminate the defendant's constructive possession." *Commonwealth v. McClellan*, 178 A.3d 874, 878 (Pa. Super. 2018) (citation omitted). Moreover, based on Richart's conclusion that the DNA profile of the vehicle's owner and operator could be excluded as a contributor to the DNA profile obtained from the firearm, the jury could have reasonably concluded that the firearm was only in the vehicle for a brief period and was placed under the passenger seat by Warren, the occupant of the passenger seat. Because

the Commonwealth's evidence established that Warren was a potential contributor to the DNA detected on the firearm and the location of the firearm was readily accessible to Warren and within his immediate control, the totality of the circumstances were sufficient to establish that Warren constructively possessed the firearm. *See McIntyre*, 333 A.3d at 432.

Therefore, the Commonwealth presented sufficient evidence to prove, beyond a reasonable doubt, that Warren possessed the firearm for purposes of sustaining his convictions under Sections 6105(a)(1) and 6106(a)(1). Accordingly, Warren's sufficiency challenge fails.

Next, Warren challenges the constitutionality of the statutes underlying his convictions. "The constitutionality of a criminal statute is a question of law for which our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Randolph*, 343 A.3d 1248, 1251 (Pa. Super. 2025) (internal quotation marks and citation omitted).

> [A] statute is presumed to be constitutional and will only be invalidated as unconstitutional if it clearly, palpably, and plainly violates constitutional rights. Further, a defendant may contest the constitutionality of a statute on its face or as-applied. A facial attack tests a law's constitutionality based on its text alone and does not consider the facts or circumstances of a particular case. An as-applied attack, in contrast, does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right. A criminal defendant may seek to vacate his conviction by demonstrating a law's facial or as-applied unconstitutionality.

*Commonwealth v. Bradley*, 232 A.3d 747, 756 (Pa. Super. 2020) (citation omitted).

- 11 -

In his second issue, Warren raises an as-applied challenge to the constitutionality of Section 6105(a)(1) based on the Second Amendment to the United States Constitution, which provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.

Warren does not dispute that he is prohibited from possessing a firearm in accordance with Section 6105(c) based on his prior PWID[9] conviction. **See** Appellant's Brief, at 18. Rather, he avers that his conviction under Section 6105(a)(1) is unconstitutional because the statute "infringes conduct that is protected under the text of the Second Amendment[,] and the Commonwealth has failed to supply a well-established and representative historical analogue for categorically disallowing those convicted of nonviolent felonies from possessing firearms." Appellant's Brief, at 20-21 (internal quotation marks and citation omitted).

Warren's challenge is premised upon **New York State Rifle & Pistol Association, Inc. v. Bruen**, 597 U.S. 1, 19 (2022), in which the United States Supreme Court rejected the use of means-end scrutiny for reviewing the constitutionality of a statute alleged to violate the Second Amendment and instead promulgated the following standard:

_____

[9] Warren does not raise any argument concerning his prior corruption of minors conviction, which also prohibits him from possessing a firearm pursuant to 18 Pa.C.S.A. § 6105(b).

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command.

*Bruen*, 597 U.S. at 24 (quotation marks and citation omitted). The Court further explained that "analogical reasoning requires only that the government identify a well-established and representative historical analogue, not a historical twin. So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." *Id.* at 30 (emphases omitted). As a preliminary matter, when faced with a Second Amendment challenge, we must determine whether the appellant is one of "the people" protected by the Second Amendment. *See Commonwealth v. Jenkins*, 328 A.3d 1076, 1085 (Pa. Super. 2024). Depending upon this determination, we next consider (1) whether the plain text of the Second Amendment covers the appellant's proposed course of conduct and (2) whether the Commonwealth met its burden of demonstrating that the regulation is consistent with our tradition of firearm regulation. *See id.* at 1087-88.

Following its decision in *Bruen*, in *United States v. Rahimi*, 602 U.S. 680 (2024), the Supreme Court considered a Second Amendment challenge to U.S.C. § 922(g)(8), which prohibited persons subject to a domestic violence restraining order from possessing firearms. The Court applied *Bruen* and

further clarified how lower courts should assess whether the government has met its burden of justifying the firearm regulation at issue by demonstrating its consistency with our history and tradition of firearm regulation:

> A court must ascertain whether the new law is relevantly similar to laws that our tradition is understood to permit, applying faithfully the balance struck by the founding generation to modern circumstances. …. As **Bruen** explained, a challenged regulation that does not precisely match its historical precursors still may be analogous enough to pass constitutional muster.
>
> *   *   *
>
> Why and how the regulation burdens the right are central to this inquiry. For example, if laws at the founding regulated firearm use to address particular problems, that will be a strong indicator that contemporary laws imposing similar restrictions for similar reasons fall within a permissible category of regulations. Even when a law regulates arms-bearing for a permissible reason, though, it may not be compatible with the right if it does so to an extent beyond what was done at the founding. And when a challenged regulation does not precisely match its historical precursors, it still may be analogous enough to pass constitutional muster. The law must comport with the principles underlying the Second Amendment, but it need not be a dead ringer or a historical twin.

**Rahimi**, 602 U.S. at 681, 692 (internal quotation marks and citations omitted). The **Rahimi** Court upheld the constitutionality of Section 922(g)(8), upon determining that "[o]ur tradition of firearm regulation allows the Government to disarm individuals who present a credible threat to the physical safety of others." **Rahimi**, 602 U.S. at 700, 144 S.Ct. 1889.

Considering the foregoing precedent, we turn to Warren's as-applied challenge. Section 6105(a)(1) prohibits Warren from possessing a firearm based on his prior felony PWID conviction. Because this Court has already

- 14 -

determined that convicted felons are encompassed within the term "the people" for Second Amendment purposes[10] and that the Second Amendment's plain text covers the course of conduct prohibited by Section 6105, Warren has satisfied the first step of the **Bruen** analysis. **See Randolph** 343 A.3d at 1256 ("[I]n the context of an as-applied challenge to § 6105, 'the people' encompasses all Americans, even criminals.") (citing **Commonwealth v. Farmer**, 329 A.3d 449, 455 (Pa. Super. 2024)).

Proceeding to the second prong of the **Bruen** analysis, we must consider whether the Commonwealth has satisfied its burden of demonstrating that Section 6105's prohibition on Warren's right to bear arms is consistent with the nation's historical tradition of firearm regulation. The Commonwealth avers that the nation has a longstanding history and tradition of disarming those who pose a danger to public peace, such as felons convicted of drug dealing. **See** Appellee's Brief, at 29. Relying on **Rahimi**, *inter alia*, the Commonwealth contends that historically, legislatures have addressed firearms violence through surety laws, which "authorized magistrates to require individuals suspected of future misbehavior to post bond[,]" and going armed laws, which "prohibited people from riding or going armed, with dangerous or unusual weapons, to terrify the good people of the land."

---

[10] While we acknowledge that the Commonwealth disputes whether Warren is one of the people protected by the Second Amendment, **see** Appellee's Brief, at 23-29, **Randolph** is dispositive on this issue.

- 15 -

Appellee's Brief, at 30 (internal quotation marks and brackets omitted) (citing

***Rahimi***, 602 U.S. at 695-96). The Commonwealth further maintains:

> The disarming under the modern person not to possess statute is "relevantly similar" to surety and going armed laws in how and why it disarms a person because it only restricts firearm possession for persons who present a credible threat of violence[] and does not restrict possession by the public generally. [***Rahimi***, 602 U.S. at 698-99).] Importantly, going armed laws allowed for imprisonment if violated; thus, the how is sufficiently similar between going armed laws and the person not to possess statute. ***Id.*** at 700.

Appellee's Brief, at 31 (unnecessary capitalization omitted).

Warren argues that under the ***Bruen*** framework, the Commonwealth failed to meet its burden of identifying a legitimate historical analogue for "categorically disallowing those convicted of nonviolent felonies[,]" such as PWID, "from possessing firearms." Appellant's Brief, at 20-21. Warren further contends that the trial court erred in denying him relief because it did not "provide a convincing reason to uphold Section 6105" where its opinion "failed to cite a single regulation from before the 20th century that directly disarmed anyone based on prior convictions." ***Id.*** at 22. Warren acknowledges that under ***Rahimi***, individuals who present a credible threat to the physical safety of others may be constitutionally disarmed but contends that the temporary disarmament in ***Rahimi*** is not analogous to his prohibition from possessing a firearm because Section 6105 imposes a "permanent disarmament" and he "has never been adjudicated to be dangerous or threatening." ***Id.*** at 25.

This Court's recent decision in **Randolph**, which addressed both a facial and as-applied Second Amendment challenge to Section 6105, is analogous to the case *sub judice*. Pursuant to the second step of the **Bruen** analysis, the **Randolph** panel considered the pertinent jurisprudence and determined that Section 6105's prohibition on the appellant's possession of a firearm was consistent with the nation's historical tradition of firearm regulation where the trial court specifically found drug trafficking to be an inherently dangerous offense, and thus, appellant's prior PWID convictions placed him in a category of persons who pose a credible threat to others. **See Randolph**, 343 A.3d at 1258. The panel concluded that "America's history of prohibiting certain classes of people from having firearms, particularly those that could pose a higher risk of danger to society, provides a historical analogue required by **Bruen** for § 6105, even if it is not a historical twin." **Id.** at 1259 (internal quotation marks and citation omitted). Therefore, because Section 6105's prohibition on the right to bear arms was supported by adequate historical analogues, the panel determined that the appellant's as-applied challenge to the constitutionality of the statute failed under **Bruen**. **See id.**

Similarly, here, we find that the Commonwealth has met its burden. As detailed at length above, the Commonwealth presented evidence of a historical tradition of prohibiting individuals who pose a credible threat of violence, such as those convicted of drug trafficking, from possessing firearms, **see** Appellee's Brief, at 29-38, which this Court previously

- 17 -

determined to be an adequate historical analogue for purposes of upholding the constitutionality of Section 6105 under **Bruen**. **See Randolph**, 343 A.3d at 1259. Moreover, in **Randolph**, we explicitly rejected the arguments Warren raises in his brief:

> In reaching this decision, we necessarily conclude that Appellant's arguments to the contrary are unpersuasive. Although he devotes a significant portion of his brief to describing that PWID is not a "crime of violence," that contention is unavailing since "crime of violence" is not the term utilized by the U.S. Supreme Court throughout its recent case law. Instead, the **Rahimi** Court highlighted that firearm prohibitions may apply to those that pose a credible threat to the safety of another. Drug traffickers fit that mold.
>
> Next, although Appellant is correct that there is no identical provision from the founding era restricting drug traffickers from having firearms, likely arising from the lack of existence of this crime in that era, that does not entitle him to relief. It is clear that historical analogues are close enough to show that § 6105 has a historically rooted how and why of restricting firearm possession. No "dead ringer" is required. **See Bruen**, 597 U.S. at 26 ....
>
> Finally, [] the ban imposed pursuant to § 6105 is not permanent because Pennsylvania law permits restoration of gun rights in certain circumstances. **See, e.g.**, 18 Pa.C.S.[A.] § 6105(d) (allowing for application to the court of common pleas for relief from the disability imposed by this section); **see also** 18 Pa.C.S.[A.] § 6105.1 (outlining procedure for restoration of firearms rights restricted by § 6105). Section 6105 is then, in that sense, less restrictive than some of the historical laws that permanently disarmed individuals without any conviction simply because they belonged to a certain class.

**Id.** (some quotation marks omitted).

Therefore, in light of our decision in **Randolph**, Warren, who was previously convicted of PWID, may be constitutionally disarmed under Section 6105 in accordance with the Second Amendment, where the trial court

determined that he posed a credible threat to the safety of others because "the nature of drug distribution as a felony is violent, both in the inherent dangerousness of the drugs on the street today and in the strong connection between drug distribution and the violent use of firearms." Order and Opinion, 11/1/23, at 5. Accordingly, Warren's as-applied challenge to Section 6105 fails.

In his third issue, Warren raises a facial challenge to the constitutionality of Section 6106 under both the United States and Pennsylvania Constitutions, which we review in accordance with **Bruen**. **See Barris v. Stroud Township**, 310 A.3d 175, 203 (Pa. 2024) (Pennsylvania Supreme Court reviewed a facial challenge to a shooting range exception to a Township's local ordinance under Second Amendment analysis). Specifically, Warren avers that, under **Bruen**, Section 6106 is facially unconstitutional because it burdens conduct protected by the Second Amendment and "there is no historical tradition of regulating such conduct." Appellant's Brief, at 26. Warren further avers that Section 6106 "violates Article I, Section 21 of the Pennsylvania Constitution, which provides even greater protection for the right to keep and bear arms than the Second Amendment[.]" **Id.**

In response, the Commonwealth contends that Warren waived this issue for our review. **See** Appellee's Brief, at 39-40. Warren acknowledges that he did not raise this challenge before the trial court but argues that he did not waive the issue because the facial unconstitutionality of Section 6106 "renders

his conviction and sentence illegal and void." Appellant's Brief, at 28-29. Therefore, according to Warren, this issue can be raised for the first time on appeal because it "implicates the legality or voidness of [his] conviction and sentence[.]" *Id.* at 29 (internal quotation marks and citation omitted).

As the Commonwealth highlights, and our review of the record confirms, Warren raised his constitutional challenge to Section 6106 for the first time on January 30, 2025, in his 1925(b) statement.

> The Pennsylvania Rules of Appellate Procedure specify that issues that are not first raised in the trial court are waived on appeal. *See* Pa.R.A.P. 302(a). Even issues of constitutional dimension cannot be raised for the first time on appeal.

*Commonwealth v. Papp*, 305 A.3d 62, 71 (Pa. Super. 2023) (case citation omitted). However, "[a] challenge that implicates the legality of an appellant's sentence[ ] is an exception to this issue preservation requirement." *Commonwealth v. Thorne*, 276 A.3d 1192, 1196 (Pa. 2022) (citation omitted). Therefore, where an appellant avers that he received "an illegal sentence due to a void *ab initio* conviction[,]" his claim implicates the legality of his sentence and may be raised for the first time on appeal. *Commonwealth v. McIntyre*, 232 A.3d 609, 619 (Pa. 2020). Accordingly, considering the specific facial constitutional challenge Warren raises, we decline to find waiver.

Turning to the merits of Warren's facial challenge, we consider the first prong of the *Bruen* analysis, which requires us to determine whether the plain text of the Second Amendment covers the proposed course of conduct.

Section 6106(a)(1) prohibits an individual from, *inter alia*, carrying a firearm in a vehicle without a valid and lawfully issued license. Warren has satisfied the first prong, as such conduct is covered by the Second Amendment's plain text. **See Bruen**, 597 U.S. at 10.

Proceeding to the second prong of the **Bruen** analysis, we must consider whether the Commonwealth has satisfied its burden of demonstrating that Section 6106's limitation on the right to bear arms is consistent with our historical tradition of firearm regulation. Warren argues that "there is no well-established and representative historical analogue for restricting the ability to carry a firearm in a vehicle." Appellant's Brief, at 31 (internal quotation marks and citation omitted). Specifically, Warren contends that "there are no historical regulations barring the carrying of firearms in motor vehicles from 1791 or 1868[,]" as "such vehicles were not widely used until the beginning of the 20th century." **Id.** at 33. Warren further maintains that "it was not until 140 years after the ratification of the Second Amendment, 63 years after the ratification of the Fourteenth Amendment, and 28 years after Pennsylvania began regulating motor vehicles that Pennsylvania began to regulate the mere carrying of weapons in automobiles through a licensing scheme." **Id.** at 34.

Relying on the recent decisions of this Court, the Commonwealth maintains that Section 6106's "limitation on carrying a firearm in a vehicle [is] analogous to historical tradition that restricted the ability of persons to carry a weapon concealed on one's person." Appellee's Brief, at 39. We agree.

In upholding the constitutionality of Section 6106 under the Second Amendment post-**Bruen**, we have explained that statutes requiring "a person to obtain a license to carry a firearm [] do not violate the Second Amendment where the statute does not require the applicant to show any special need and requires the government to issue the license unless the applicant fails a background check." **Mead**, 326 A.3d at 1015 (citations omitted). Accordingly, we have held that because Pennsylvania's shall-issue firearm licensing statute does not violate the Second Amendment under **Bruen**, Section 6106 is likewise constitutional, and an "[a]ppellant's conviction for carrying a firearm without a license does not violate his federal constitutional rights." **Id.**[11]

More recently, in **Commonwealth v. Williams**, 341 A.3d 144 (Pa. Super. 2025), a panel of this Court specifically considered the constitutionality of Section 6106's limitation on the right to carry a firearm in a vehicle. In doing so, the panel analyzed our nation's historical tradition of regulating the concealed carrying of firearms on one's person and noted that it considered "the possession of a firearm in a vehicle, as opposed to on one's person, nearly indistinguishable." **Williams**, 341 A.3d at 158 n. 25. The panel addressed the

---

[11] Warren asserts that **Mead** "was wrongly decided where no such licensing schemes have historically governed the distinct act of bearing arms in a motor vehicle or in pre-automobile forms of transportation." Appellant's Brief, at 36. However, as Warren acknowledges, **Mead** is binding precedent, **see** Appellant's Brief, at 36 n.19, and this panel "lacks the authority to overturn another panel decision." **Commonwealth v. May**, 271 A.3d 475, 482 (Pa. Super. 2022) (citation omitted).

appellant's arguments, which are analogous to those raised in the case *sub judice*, as follows:

> While Williams makes a compelling case that our historical tradition is rather quiet on the question of carrying firearms in the available forms of transportation in the 19th century, we do not need a regulation of that sort to find section 6106 constitutional. ***See Bruen***, 597 U.S. at 3 … (stating courts need not find "dead ringer" to hold law constitutional). This reasoning follows a "use it or lose it view of legislative authority"—it assumes that late-18th and early-19th century legislatures constitutionally could not have legislated in this fashion merely because they did not. ***See Rahimi***, 602 U.S. at 739–40 … (Barrett, J., concurring) (internal quotation omitted). This rationale, however, is flawed and forces upon [present-day] legislatures a law trapped in amber. Such an approach would turn any Second Amendment analysis into a historical inquiry so exacting as to be useless, a too-sensitive alarm that sounds whenever a regulation did not exist in an essentially identical form at the founding.
>
> Instead, this Court need only, and does, consider section 6106 relevantly similar to the many public-carry restrictions which proliferated after the ratification of the Second Amendment in 1791. ***See Bruen***, 597 U.S. at 50 …. Carrying a weapon concealed on one's person versus storing it in the glovebox or center console is, to this Court, a distinction without a difference. If anything, the additional number of spaces in which to store a firearm within a vehicle, the variety of firearms that can be carried within a vehicle as opposed to concealed on one's person, and the portability provided by modern vehicles all weigh in favor of section 6106 applying with greater force to possession within a vehicle than possession on one's person.

*Id.* (some quotation marks, some citations, and brackets omitted). The panel concluded that because "section 6106 can then be viewed through the same lens as a standard licensing scheme for concealed carry, ***Bruen*** is controlling, and section 6106's prohibition on unlicensed individuals possessing a firearm in a vehicle is similarly constitutional." *Id.* (citation omitted). Therefore, this

Court's decision in *Randolph* is dipositive, and Warren's facial challenge to the constitutionality of Section 6106 under the Second Amendment fails.

Additionally, Warren raises a facial constitutional challenge to Section 6106 based on Article I, Section 21 of the Pennsylvania Constitution, which provides: "The right of the citizens to bear arms in defence of themselves and the State shall not be questioned." Pa. Const. Art. I, § 21. Although this Court has repeatedly held, post-*Bruen*, that Article I, Section 21 offers no greater protection of the right to bear arms than the Second Amendment, *see Williams*, 341 A.3d at 158-59; *Mead*, 326 A.3d at 1015; *Jenkins*, 328 A.3d at 1096, Warren impermissibly asks this panel to find that our state constitution offers broader protection than its federal counterpart. *See* Appellant's Brief, at 39-47; *May*, 271 A.3d at 482. Therefore, based on our determination that Section 6106 does not violate the Second Amendment, Warren's Article I, Section 21 challenge likewise fails.

For the foregoing reasons, Warren is not entitled to his requested relief, and we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/31/2025