J-A26004-21

2022 PA Super 25

COMMONWEALTH OF PENNSYLVANIA  :   IN THE SUPERIOR COURT OF
                                       :               PENNSYLVANIA
                                       :
               v.                       :
                                       :
                                       :
RAHSAAN O. MAY                 :
                                       :
           Appellant         :     No. 139 EDA 2021

Appeal from the Judgment of Sentence Entered November 23, 2020
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0004281-2018

BEFORE:  BOWES, J., STABILE, J., and McCAFFERY, J.

OPINION BY BOWES, J.:                           **FILED FEBRUARY 15, 2022**

Rahsaan O. May appeals from his November 23, 2020 judgment of sentence imposed after the trial court found him guilty of driving under the influence ("DUI") of a controlled substance. After careful review, we affirm.

The trial court summarized the facts as follows:

On February 28, 2018[,] at 8:33 a.m., police officers from the Radnor Township Police Department were dispatched to the 200 block of King of Prussia Road, Radnor Township, Delaware County, Pennsylvania to respond to a report of an overturned box truck. King of Prussia Road is a state highway near a railroad overpass utilized by both AMTRAK and SEPTA's regional rail system. King of Prussia Road and the secondary roadways leading to the overpass have multiple, clearly posted bridge height signs referencing a 10′ 10″ clearance. Upon arriving on scene, Officer Janoski observed a white box truck bearing Pennsylvania registration ZJM-4627 partially overturned and resting on its driver side positioned under the bridge. The truck displayed the name "Two Men and A Truck" and appeared to Officer Janoski to be a 19-foot box truck with a height of [twelve] feet. During the crash investigation it was determined the truck was operated by

[Appellant] who was positively identified by his Pennsylvania Drivers' License number.

Appellant May stated he was traveling southbound on King of Prussia Road when the box of the truck struck the I-beam of the bridge causing the vehicle to overturn. [Appellant] was aware the truck was [twelve] feet high but he did not see the signs warning of the bridge height. When the truck collided with the bridge it overturned striking an occupied vehicle traveling under the overpass in a northbound direction.

While speaking with [Appellant] at the scene, Officer Janoski detected an odor of burnt marijuana emanating from his person. When asked if he smoked anything that day, [Appellant] responded: "I smoked a little weed this morning." While speaking with [Appellant], he persistently placed his hands inside his sweatshirt pockets despite Officer Janoski's repeated instructions to [Appellant to] keep his hands visible. [Appellant] voluntarily agreed to an officer safety pat down and a green, leafy vegetable matter was located on his person.

[Appellant] submitted to [s]tandardized [f]ield [s]obriety [t]esting and was ultimately placed in police custody. Appellant was transported to Bryn Mawr Hospital where he was advised of [c]hemical [t]esting [w]arnings DL-26 and voluntarily submitted to a chemical test of his blood.

Trial Court Opinion, 2/26/21, at 1-3 (citations omitted).

Appellant was arrested and charged with DUI of a controlled substance. The Commonwealth filed a motion *in limine* to exclude the testimony of Appellant's proposed expert, Dr. Lawrence Guzzardi. On October 14, 2020, the trial court granted oral argument on the motion before excluding the testimony and report. Appellant immediately proceeded to a non-jury trial. The Commonwealth put forth the testimony of the operator of the vehicle that Appellant hit, the officer who responded to the accident, and a toxicologist who opined that Appellant's blood contained marijuana metabolites. Appellant

elected not to testify but argued that the marijuana detected in his blood was too low to impair his ability to operate a motor vehicle. The trial court found Appellant guilty of DUI of a controlled substance, an ungraded misdemeanor.

On November 23, 2020, the court sentenced Appellant to six months of restrictive probation and ordered him to pay a mandatory $1,000 fine and $168 lab fee. As conditions of his restrictive probation, Appellant was ordered to complete twenty days of electronic home monitoring, eighty hours of community service, undergo a Court Reporting Network evaluation, and complete safe driving classes. Appellant filed a post-sentence motion which was denied. The instant appeal followed. Both Appellant and the trial court complied with the mandates of Pa.R.A.P. 1925.

Appellant presents the following issues for our review:

1.      Whether the lower court erred in precluding the testimony of defense expert, Lawrence Guzzardi, MD, to refute the laboratory report (Exhibit C8) and testimony of two prosecution witnesses, since the expert's proffered testimony was relevant, including on the issue of credibility, and therefore could have caused the factfinder to disregard some or all of the prosecution's evidence, thereby resulting in acquittal?

2.      Whether the court below erred and imposed an illegal sentence when it ordered Appellant to pay a fine without first assessing his ability to pay?

Appellant's brief at 4-5.

First, Appellant challenges the trial court's decision to exclude expert testimony and a report. *See* Appellant's brief at 12-18. We review a trial court's decision to admit or exclude expert opinion testimony under an abuse

of discretion standard. *See Commonwealth v. Pi Delta Psi, Inc.*, 211 A.3d 875, 881 (Pa.Super. 2019). An abuse of discretion "occurs if the trial court renders a judgment that is manifestly unreasonable, arbitrary or capricious; that fails to apply the law; or that is motivated by partiality, prejudice, bias or ill-will." *Id*. (quoting *Hutchinson v. Penske Truck Leasing Co.*, 876 A.2d 978, 984 (Pa.Super. 2005)).

Herein, the trial court prohibited Lawrence Guzzardi, M.D., a toxicologist, from submitting a report or offering testimony after Appellant conceded that Dr. Guzzardi would not dispute the test results indicating the presence of marijuana in Appellant's blood. N.T. Non-Jury Trial, 10/14/20, at 15. Instead, he planned to offer testimony questioning Appellant's level of impairment. *Id*. The trial court reasoned that since the controlled substance subsection at issue prohibited any amount of the controlled substance to be within an accused's system, testimony regarding the level of Appellant's impairment was not relevant. *Id*.; *see also* Pa.R.E. 402 (explaining that relevant evidence is evidence that tends to establish a material fact in the case or make a fact at issue more or less probable). We agree.

Appellant proceeded to trial on a charge of 75 Pa.C.S. § 3802(d)(1)(i), DUI of a controlled substance, which provides:

> (d) Controlled substances. An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:
>
> (1) There is in the individual's blood **any amount** of a:

> (i) Schedule I controlled substance, as defined in the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act;

75 Pa.C.S. § 3802(d)(1)(i) (emphasis added).

Therefore, for the Commonwealth to meet its burden of proof, it needed to prove: (1) that Appellant was in actual physical control or operated the motor vehicle and (2) that he had a schedule I controlled substance in his blood. *Id*. The Commonwealth was not required to establish that Appellant was impaired in order to convict him pursuant to § 3802(d)(1)(i). *See Commonwealth v. Hutchins*, 42 A.3d 302, 310 (Pa.Super. 2012) (finding that a conviction under § 3802(d)(1) does not require that a driver be impaired, only that a driver has any amount of a specifically enumerated controlled substance in his blood). Since the DUI subsection at issue criminalizes any amount of schedule I controlled substance in the blood, it was within the court's discretion to conclude that testimony regarding Appellant's level of impairment was irrelevant.

Appellant counters that *Commonwealth v. Taylor*, 209 A.3d 444 (Pa.Super. 2019), supports his position. *See* Appellant's brief at 14-16. However, his reliance on *Taylor* is misplaced. In *Taylor*, the appellant was arrested for DUI after she crashed her vehicle into a utility pole, failed field sobriety testing, and admitted to taking Xanax and Adderall. No blood testing was completed, and the appellant was unable to provide the amounts she took or how long before the accident they were ingested.

The appellant was charged with endangering the welfare of a child and DUI of a Schedule IV controlled substance, a different subsection than the one at issue in the case at bar. *See* 75 Pa.C.S. § 3802(d)(2). At trial, "a central point of dispute" was whether the appellant was impaired by controlled substances at the time she crashed the vehicle. *Id*. at 447. To establish impairment, the Commonwealth relied on the arresting officer's testimony about the field sobriety testing and his opinion that the appellant's performance was impaired due to drug use. The defense countered that the appellant's poor performance was due to a head injury and sought to admit the testimony of Dr. Guzzardi. Dr. Guzzardi confirmed that appellant had been prescribed Xanax and Adderral, but explained that, when taken as proscribed, the appellant should have experienced little to no side effects from the drugs. Dr. Guzzardi also attempted to opine that field sobriety testing had never been validated as indicators of impairment due to drug use. However, the Commonwealth objected and the trial court sustained the objection. Accordingly, the jury never heard Dr. Guzzardi's opinion regarding the effectiveness of field sobriety testing for detecting drug impairment. The appellant was convicted.

On appeal, we reversed, holding that Dr. Guzzardi's opinion was derived from "years of rigorous scholarship" and would have rebutted the officer's conclusion that the appellant was impaired by drugs. *Id*. at 449, 451 ("the excluded testimony went to the heart of a central jury question."). Since it

was for the jury to weigh the evidence, and it was never afforded the opportunity, the trial court committed prejudicial error by excluding the testimony. *Id*.

Unlike in *Taylor*, herein, expert testimony concerning the impairing effects of the medication was irrelevant to whether Appellant would be convicted or acquitted. The prosecution in this case involved a different subsection of the DUI statute that did not require proof of impairment. Moreover, the Commonwealth proved its case through admission of a blood test result that showed the presence of marijuana in Appellant's blood, not field sobriety testing. Dr. Guzzardi's planned testimony would not have challenged the methodology behind the chemical testing of Appellant's blood, nor the findings that Appellant had a Schedule I controlled substance in his blood while driving. *See* N.T., 10/14/20, at 11-12, 15, 18-19, 23. Thus, it would not have controverted the Commonwealth's evidence and the trial court was well within its discretion to deny the testimony. Accordingly, we find that *Taylor* is inapplicable, and no relief is due on Appellant's first issue.

In his second claim, Appellant alleges that the court erroneously imposed a mandatory fine without first assessing his ability to pay, which was in violation of 42 Pa.C.S. § 9726(c), Pa.R.Crim.P. 706(C), and the excessive

fines clause of the Pennsylvania and United States Constitutions.[1]   ***See***

Appellant's brief at 18.   Since this argument challenges the legality of

Appellant's sentence, "[o]ur standard review over such questions is *de novo*

and our scope of review is plenary."   ***Commonwealth v. Wolfe***, 106 A.3d

800, 802 (Pa.Super. 2014).   For the reasons that follow, we find that § 9726(c)

does not apply to mandatory fines, Rule 706(C) does not require an ability to

pay hearing until incarceration for failure to pay is at issue, and 75 Pa.C.S.

§ 3804(c)(1)(ii) does not violate the excessive fines clause of the Pennsylvania

and United States Constitutions.

## I.    42 Pa.C.S. § 9726(c)

First, Appellant argues that the trial court erred by imposing a $1,000

fine without conducting a hearing to determine his ability to pay pursuant to

42 Pa.C.S. § 9726(c).   ***See*** Appellant's brief at 18.   Section 9726(c) provides,

in relevant part, as follows:

> The court shall not sentence a defendant to pay a fine unless it
> appears of record that:
>
> (1)    the defendant is or will be able to pay the fine[.]

42 Pa.C.S. § 9726(c).   Appellant contends that § 9726(c) required the trial

court to hold such a hearing before imposing any fine.   ***Id***. at 19.   Appellant

---

[1]  Appellant raises this claim for the first time on appeal.  However, this claim is non-waivable since Appellant argues that it implicates the legality of his criminal sentence.  ***See Commonwealth v. Boyd***, 73 A.3d 1269, 1270 (Pa.Super. 2013) (*en banc*).  Accordingly, we decline to find waiver.

concedes that the fine imposed here was required by 75 Pa.C.S. § 3804(c)(1)(ii), but nevertheless asserts that § 3804 and § 9726 can be harmonized by reading the provisions so as to conclude that the mandatory fine must be imposed unless the defendant cannot afford it. *Id*. at 28-31. Specifically, 75 Pa.C.S. § 3804(c)(1)(ii) provides as follows:

> An individual who violates section 3802 . . . (d) **shall** be sentenced as follows:
>
> (1) for a first offense, to:
>
> . . .
>
> (ii) pay a fine of not less than $1,000 nor more than $5,000[.]

75 Pa.C.S. § 3804(c)(1)(ii) (emphasis added). Appellant also urges us to overrule or distinguish ***Commonwealth v. Cherpes***, 520 A.2d 439 (Pa.Super. 1987), which held that the general provisions of § 9726(c) could not prevail over a specific penalty provision. *Id*. at 28.

In contrast, the Commonwealth responds that Appellant's sentence was legal. ***See*** Commonwealth's brief at 18-19. It maintains that the ability-to-pay inquiry of § 9726(c) is required only for non-mandatory fines. *Id*. at 19 (citing ***Commonwealth v. Ford***, 217 A.3d 824, 829 (Pa. 2018)). Thus, consistent with ***Cherpes*** and its progeny, the Commonwealth maintains that the specific penalty provision at issue herein must govern. *Id*. at 19-20; ***see also*** 75 Pa.C.S. § 3804(c)(1)(ii). We agree.

It is well-established that § 9726(c) does not apply to mandatory fines. **See Commonwealth v. Gipple**, 613 A.2d 600, 601 n. 1 (Pa.Super. 1992) (finding that § 9726(c) did not apply to mandatory fines). This position was recently reinforced by our Supreme Court in **Ford**, wherein the Court observed that "a presentence hearing on the ability to pay a mandatory fine is not required." **Ford**, **supra** at 827-28 (citing **Gipple**, **supra** at 601 n.1).

In this case, the trial court concluded that the fine imposed was statutorily required by § 3804(c)(1)(ii). **See** Trial Court Opinion, 2/26/21 at 23-26. Specifically, 75 Pa.C.S. § 3804(c)(1)(ii) provides that "an individual who violates section 3802 . . . **shall** be sentenced," on a first offense, to "pay a fine of not less than $1,000 nor more than $5,000." 75 Pa.C.S. § 3804(c)(1)(ii) (emphasis added). We agree that the sentencing court was statutorily required to impose a fine of at least $1,000. **See Oberneder v. Link Computer Corp.**, 696 A.2d 148, 150 (Pa. 1997) ("By definition, 'shall' is mandatory."). Thus, § 9726(c) was inapplicable and Appellant's claim of an illegal sentence is meritless. **See Ford**, **supra** at 827-28. Furthermore, for the reasons explained, *infra*, we reject Appellant's argument urging us to overturn or distinguish **Cherpes**. This panel is bound by existing precedent and, therefore, lacks the authority to overturn another panel decision. **See Commonwealth v. Beck**, 78 A.3d 656 (Pa.Super. 2008) (holding that a three-judge panel of this Court is "not empowered to overrule another panel of the Superior Court").

In ***Cherpes***, a township commissioner was convicted of violations of the State Ethics Act and unsworn falsification to authorities. As part of his sentence, the commissioner was ordered to pay a mandatory fine of $197,061 pursuant to a specific penalty provision. On appeal, he argued that the specific penalty provision, which required a penalty equal to three times the amount gained through violation of the State Ethics Act, should have been construed in light of § 9726(c) so that the fine was tempered by his ability to pay. ***See*** ***Cherpes***, ***supra*** at 449. In affirming the commissioner's sentence, the ***Cherpes*** court concluded that a statute setting forth a mandatory penalty was "specific," and thus "prevail[ed] over the more general provision in § 9726(c)." ***Id***. at 449 (citing ***Commonwealth v. Bidner***, 422 A.2d 847 (Pa.Super. 1980); 1 P.S. § 1933). Accordingly, our review confirms that ***Cherpes*** controls in these circumstances. Thus, Appellant's argument is without merit.

## II.   Pa.R.Crim.P. 706(C)

In his second sub-claim, Appellant alleges that the $1,000 fine constituted an illegal sentence under Pa.R.Crim.P. 706(C). ***See*** Appellant's brief at 24. Pennsylvania Rule of Criminal Procedure 706(C) provides:

> The court, in determining the amount and method of payment of a fine or costs shall, insofar as is just and practicable, consider the burden upon the defendant by reason of the defendant's financial means, including the defendant's ability to make restitution or reparations.

Pa.R.Crim.P. 706(C). In Appellant's view, Rule 706(C) also instructs courts to consider the burden upon a defendant before imposing a fine, such that a failure to do so constitutes an illegal sentence. *Id*. at 24-25. We disagree.

When viewed in its proper context, it is clear that Rule 706(C) only requires the court to hold an ability-to-pay hearing when a defendant faces incarceration for failure to pay court costs previously imposed on him:

> (A) A court **shall not commit the defendant to prison** for failure to pay a fine or costs unless it appears after hearing that the defendant is financially able to pay the fine or costs.
>
> (B) When the court determines, after hearing, that the defendant is without the financial means to pay the fine or costs immediately or in a single remittance, the court may provide for payment of the fines or costs in such installments and over such period of time as it deems to be just and practicable, taking into account the financial resources of the defendant and the nature of the burden its payments will impose, as set forth in paragraph (D) below.
>
> (C) The court, in determining the amount and method of payment of a fine or costs shall, insofar as is just and practicable, consider the burden upon the defendant by reason of the defendant's financial means, including the defendant's ability to make restitution or reparations.
>
> (D) In cases in which the court has ordered payment of a fine or costs in installments, the defendant may request a rehearing on the payment schedule when the defendant is in default of a payment or when the defendant advises the court that such default is imminent. At such hearing, the burden shall be on the defendant to prove that his or her financial condition has deteriorated to the extent that the defendant is without the means to meet the payment schedule. Thereupon the court may extend or accelerate the payment schedule or leave it unaltered, as the court finds to be just and practicable under the circumstances of record. When there has been default and the court finds the defendant is not indigent, the court may impose imprisonment as provided by law for nonpayment.

Pa.R.Crim.P. 706 (emphasis added).

Our review of the relevant authority confirms our interpretation of Rule 706. As we have previously explained:

> [A] defendant is not entitled to a pre-sentencing hearing on his or her ability to pay costs. While Rule 706 permits a defendant to demonstrate financial inability either after a default hearing or when costs are initially ordered to be paid in installments, the Rule only requires such a hearing prior to any order directing incarceration for failure to pay the ordered costs.... [I]t is not constitutionally necessary to have a determination of the defendant's ability to pay prior to or at the judgment of sentence. We [therefore] conclude that [a] ... trial court only [must] make a determination of an indigent defendant's ability to render payment before he/she is committed.

*Commonwealth v. Childs*, 63 A.3d 323, 326 (Pa.Super. 2013) (citation omitted).

Here, Appellant was convicted of § 3802(d)(1)(i), and the trial court was required to impose the $1,000 fine as a result. *See* 75 Pa.C.S. § 3804(c)(1)(ii). Consistent with the foregoing, the trial court properly concluded that because it was not committing Appellant to serve incarceration for failing to pay the mandatory fine, no ability to pay hearing was required. *See* Trial Court Opinion, 2/26/21, at 24-26. Appellant counters that *Commonwealth v. Martin*, 335 A.2d 424 (Pa.Super. 1975) (*en banc*), and *Commonwealth v. Lopez*, 248 A.3d 589 (Pa.Super. 2021) (*en banc*), support his position that an ability to pay hearing was required by Rule 706(C). We disagree.

In ***Martin***, the defendant was convicted of involuntary manslaughter and sentenced to pay a $5,000 fine pursuant to a discretionary sentencing statute. The relevant statute instructed the sentencing court that it "may" sentence a person convicted of a first-degree misdemeanor to pay a fine not exceeding $10,000. On appeal, we vacated and remanded for resentencing because we found that the sentencing court's reasoning for imposing a $5,000 fine was improper. ***Id***. at 426. Accordingly, we vacated the non-mandatory fine on grounds not related to Rule 706. Thus, this case is inapposite to Appellant's argument.

***Lopez*** involved the imposition of mandatory court costs following a probation revocation. Prior to the resentencing hearing, appellant filed a motion for an ability-to-pay hearing to waive costs, which he argued was required by Rule 706(C). The court heard argument on the legal issues raised by the motion before denying it. On appeal, this Court conducted a statutory analysis of Rule 706(C) and found that Rule 706(C) did not **require** a trial court to hold an ability-to-pay hearing until a defendant risked incarceration for failing to pay court costs. ***See Lopez***, ***supra*** at 592. While the trial court retained discretion to hold an ability-to-pay hearing at sentencing, it was not mandated to do so by Rule 706(C). Instantly, Appellant was subjected to a mandatory fine and was not facing incarceration due to a failure to pay the fine. Thus, Appellant's reliance on ***Lopez*** is unavailing. Accordingly, his second sub-claim also fails.

### III. Excessive Fines Clause

In his final sub-claim, Appellant contends that the imposition of a $1,000 fine violated the prohibition against excessive fines contained in the Eighth Amendment of the United States Constitution and Article I, Section 13 of the Pennsylvania Constitution. **See** Appellant's brief at 32-42. Specifically, Appellant contends that § 3804 is unconstitutional because it requires a sentencing judge to impose a mandatory fine without ever permitting the judge to consider whether the fine would "effectively pauperize a defendant for a single act." **Id**. at 36. We disagree.

Whether a fine is excessive under our Constitution is a question of law, therefore our standard of review is *de novo* and our scope of review is plenary. **See Commonwealth v. Eisenberg**, 98 A.3d 1268, 1279 (Pa. 2014). The Eighth Amendment to the U.S. Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST., Amend. VIII. The protections provided by Article I, Section 13 of the Pennsylvania Constitution are coextensive with those provided by the Eighth Amendment.[2] **See Commonwealth v. 5444 Spruce Street, Philadelphia**, 832 A.2d 396, 399 (Pa. 2003).

---

[2] Article I, Section 13 of the Pennsylvania Constitution states that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel punishments inflicted." PA. CONST., Art. I, § 13.

In addressing Appellant's argument, we are guided by *Eisenberg*, which instructs us to consider whether the fine imposed was reasonably proportionate to the crime it criminalizes. In *Eisenberg*, our Supreme Court determined that a mandatory minimum fine of $75,000 for a conviction of a first-degree misdemeanor theft from a casino of $200 was an excessive fine in violation of Article I, Section 13 of the Pennsylvania Constitution. In conducting its proportionality analysis, the Court was persuaded by the fact that: (1) the amount owed was 375 times the amount of the theft; (2) the Crimes Code equivalent of the appellant's offense – a first degree misdemeanor – would have been $10,000; (3) the maximum fine imposable under the Crimes Code was $50,000, which would be for a murder or attempted murder conviction, and (4) the fine would exhaust five years of pre-tax income for a minimum wage worker, "effectively pauperiz[ing] a defendant for a single act." *Id*. at 1286. The *Eisenberg* court also distinguished its holding from cases where the fine is "tailored, scaled, and in the strictest sense calculated to their offenses", as follows:

> In [*Commonwealth v.*] *Church*, [522 A.2d 30 (Pa.1987),] overweight vehicles were fined on a sliding scale **per pound** over the weight limit. In *Eckhart* [*v. Department of Agriculture*, 8 A.3d 401 (Pa.Cmwlth. 2010) ], the appellant kennel operator had committed numerous infractions incurring a fine amount in excess of $150,000 based on a $100–$500 **per dog/per day** penalty scheme, $15,000 of which appellant claimed was excessive in light of perceived triviality of the offense. In [*Commonwealth v.*] *CSX* [*Transportation, Inc.*, 653 A.2d 1327 (Pa.Cmwlth. 1995),] the appellant's train car leaked enough corn syrup into the Youghiogheny River to kill approximately 10,000 fish, and thus

appellant incurred a roughly $100,000 fine, based on a $10 **per fish** calculation.

*Id*. at 1287 n.24 (emphasis in original).

Herein, the statute at issue follows the "sliding scale" approach expressly sanctioned by *Eisenberg* as it is "tailored, scaled, and in the strictest sense calculated to [the] offenses." *Id*. at 1287. Section 3804 distinguishes DUI punishments based upon the substance imbibed, the level of impairment, the number of prior DUI's committed, if there was an accident that resulted in bodily injury or property damage, and if there were any minor occupants. *See* Pa.C.S. § 3804. Further, the mandatory DUI fines at issue in this case amount to far less than the substantial criminal administrative penalties in *Church* and *CSX*. *See Eisenberg*, *supra* at 1287 n.24.

With specific regard to Appellant's § 3802(d)(1)(i) conviction, our legislature has encased the proportionality assessment favored by *Eisenberg* within the statute, which is tailored and scaled based upon the number of DUI offenses a defendant has committed:

> **(c) Incapacity; highest blood alcohol; controlled substances**.--An individual who violates section 3802(a)(1) and refused testing of breath under section 1547 (relating to chemical testing to determine amount of alcohol or controlled substance) or testing of blood pursuant to a valid search warrant or an individual who violates section 3802(c) or (d) shall be sentenced as follows:
>
> (1) For a first offense, to:
>
> > (i) undergo imprisonment of not less than 72 consecutive hours;

(ii) pay a fine of not less than $1,000 nor more than $5,000;

(iii) attend an alcohol highway safety school approved by the department; and

(iv) comply with all drug and alcohol treatment requirements imposed under sections 3814 and 3815.

(2) For a second offense, to:

(i) undergo imprisonment of not less than 90 days;

(ii) pay a fine of not less than $1,500;

(iii) attend an alcohol highway safety school approved by the department; and

(iv) comply with all drug and alcohol treatment requirements imposed under sections 3814 and 3815.

(3) For a third or subsequent offense, to:

(i) undergo imprisonment of not less than one year;

(ii) pay a fine of not less than $2,500; and

(iii) comply with all drug and alcohol treatment requirements imposed under sections 3814 and 3815.

75 Pa.C.S. § 3804(c).

Additionally, the $1,000 fine does not threaten Appellant with the functional equivalent of "pauperization." *See Eisenberg*, *supra* at 1285-86. The *Eisenberg* Court found persuasive the fact that with a minimum wage of $7.25 per hour, a $75,000 fine would exhaust approximately five years of pre-tax income of a minimum wage worker. However, with minimum wage still at $7.25 per hour, § 3804(c)(1)(ii)'s $1,000 fine is seventy-five times less impactful than the one at issue in *Eisenberg*.

Simply put, Appellant has not convinced us that the fine at issue was akin to the one our Supreme Court struck down in **Eisenberg**. A fine of $1,000 is not grossly disproportionate to the crime committed and unlikely to deprive Appellant of his livelihood. Undoubtedly, the Commonwealth has a compelling interest in protecting its citizens from the dangers posed by impaired driving, which are well-established. **See Commonwealth v. Tarbert**, 535 A.2d 1035, 1042 (Pa. 1987) (citing a string of cases summarizing the "terrible costs in human life, injury and potential" that drunk driving exacts). Indeed, we do not underestimate the impact of Appellant's actions, and those similarly situated, which by driving after imbibing intoxicating substances put the lives and property of other citizens of this Commonwealth at risk. **See** N.T. 10/14/20, at 38 (Mr. Flaherty testifying that if Appellant's truck had impacted his vehicle any lower it "probably would have just killed me").

Herein, the legislature found that driving while impaired by a Schedule I substance merited a minimum mandatory fine of $1,000. **See** 75 Pa.C.S. § 3804(c). As that punishment is proportional to the crime, we hold that

§ 3804 does not violate the excessive fines clause of the Pennsylvania or United States Constitution.[3, 4]

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/15/2022

---

[3] Public Justice and the American Civil Liberties Union have filed *amicus curiae* briefs in support of Appellant's position. However, their arguments are more properly addressed to this Court *en banc* or to our Supreme Court, as we lack the authority to overrule the precedent they challenge or to make policy determinations.

[4] Our decision does not bar Appellant from requesting an ability-to-pay hearing in the future. A defendant has the constitutional right to an opportunity to show that he cannot afford the fine or costs that have been imposed on him prior to being incarcerated for failure to pay the fine or costs. ***See Commonwealth v. Lopez***, 248 A.3d 589, 594 (Pa.Super. 2021).