IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Commonwealth of Pennsylvania | : | |
| | : | |
| v. | : | No. 523 C.D. 2024 |
| | : | |
| Alex Zbinovsky, | : | Submitted: November 6, 2025 |
| Appellant | : | |

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE LORI A. DUMAS, Judge

*__OPINION NOT REPORTED__*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                         FILED: December 23, 2025

Alex Zbinovsky (Zbinovsky) appeals from the April 3, 2024 order of the Luzerne County Court of Common Pleas (trial court) affirming on summary appeal his conviction of one summary count of violating Section 7-25 Unsafe Buildings of the Code of Ordinances, City of Wilkes-Barre, Pennsylvania (Ordinance)[1] and imposing

---

[1] Section 7-25(a) of the Ordinance states: "Whenever any building, structure or part thereof or appurtenances thereto shall have been declared dangerous or unsafe by the building inspector or his designee or the fire inspector, the building shall, unless made safe and so certified by the building inspector, be demolished, taken down or removed."  Code of Ordinances, City of Wilkes-Barre, Pennsylvania, ch. 7, art. II, § 7-25.

Section 7-26(c)(2) outlines the penalties for such a violation: "The owner of a building, structure or premises where anything in violation of these building regulations shall be placed or shall exist . . . **shall each be guilty of a separate offense** and upon conviction thereof **shall be liable to a fine of not more than one thousand dollars ($1,000.00)** for each offense. **Each day** that the violation or unsafe condition shall continue **shall constitute a separate offense** and **shall be liable**
**(Footnote continued on next page…)**

an initial fine of $1,000 plus a fine of $1,000 per day until the violation is ameliorated. Upon review, we affirm.

## I.   FACTUAL AND PROCEDURAL HISTORY

The facts in this case are not contested and may be summarized as follows. Zbinovsky owns two buildings[2] at 447 New Grove Street in Wilkes-Barre. They include a four-story main structure with a one-story annex that wraps around, in an L-shape, the side and rear of the former. (R.R. at 12a-15a.)[3] The one-story annex is accessible to the four-story building via an enclosed hallway. (R.R. at 25a.)

In March of 2023, Francis Evanko with the Wilkes-Barre City Fire Department investigated the property due to a report that the annex was moonlighting as an unlicensed repair garage. (R.R. at 10a.) While discovering car components inside, Mr. Evanko was told that the annex was used for personal car repairs as well as for storing tanning beds. (R.R. at 16a.) Whether or not the annex operated as an

---

**to a fine of not more than one thousand dollars ($1,000.00).**" (emphasis added). Code of Ordinances, City of Wilkes-Barre, Pennsylvania, ch. 7, art. II, § 7-26(c)(2).

[2] During both the January 3, 2024 and April 3, 2024 hearings, there was a disagreement as to whether the property consisted of a single building with two components (the four-story building and one-story annex) or two separate buildings. *Compare* Reproduced Record (R.R.) at 12a-13a (Zbinovsky objecting to the characterization of the main structure and annex being one building instead of two) *with* R.R. at 17a (Commonwealth noting that the "nature of the citation is this whole structure" alluding to one building) *with* R.R. at 31a (trial court alluding to two buildings: "You [Zbinovsky] can pick whatever building you want the citation to be on. I can pick whatever building I want the citation to be on."). The trial court ultimately found that the property consisted of two buildings when it found Zbinovsky guilty. (R.R. at 45a) ("I'm only fining you for the four-story building, not the one-story building.").

[3] The pages in the reproduced record are not properly affixed with the lowercase "a" as required by Rule 2173 of the Pennsylvania Rules of Appellate Procedure. Pa.R.A.P. 2173 (requiring pages of the reproduced record to be numbered separately in Arabic figures followed by a small "a," thus 1a, 2a, 3a, etc.). Accordingly, we cite to the record while affixing the "a."

unlicensed repair garage went unanswered because Mr. Evanko directed his attention to the other building. There, Mr. Evanko observed the four-story building had suffered from a "heavy collapse" and deemed it a "very unsafe structure for everybody around." (R.R. at 16a-17a.) He reported his observations to Daniel Kratz, a Building Code Official with the City of Wilkes-Barre, who followed up with the buildings in the same month. (R.R. at 17a, 24a.)

Mr. Evanko returned to the property a couple of days later to further inspect the annex where he discovered a man residing therein, an inoperable sprinkler system, and multiple electrical violations including "[o]pen breaker boxes [and] illegal wiring on multiple levels." (R.R. at 18a-19a.) On cross-examination, Mr. Evanko detailed other violations with the annex. This included "water damage[,] . . . the apartment, . . . no bathroom, no kitchen area[,] the alarm system[,] . . . the sprinkler system[, and] crowding." (R.R. at 20a.)

When Mr. Kratz, the Building Code Official, inspected the property in March of 2023, he observed similar violations and concerns that Mr. Evanko had observed. (R.R. at 24a.) The one-story annex appeared to be used as an apartment, and there were exposed wires, "open electrical panels," and water damage and leakage from the roof. (R.R. at 25a.) Altogether, Mr. Kratz found the annex to be "relatively dilapidated." *Id.*

When Mr. Kratz proceeded to the four-story building, he observed that the roof had collapsed through each floor down to the ground level. *Id.* Mr. Kratz "didn't even feel safe once [he] got in" that building and "didn't want to stay in there too long." *Id.*

After the inspection, Mr. Kratz marked the property as "unfit for human habitation" and mailed to Zbinovsky the notice on March 17, 2023. (R.R. at 25a-27a.)

That notice referred to only the four-story building and not to the annex. (R.R. at 29a.) Mr. Kratz also never observed any remedial effort by Zbinovsky towards the dilapidated property. (R.R. at 27a.) Further, Thomas Leonard with TGL Engineering prepared a report on the building where he concluded that the property was a "dangerous structure" that "present[ed] a serious hazard to the neighboring properties and street." (R.R. at 28a.) Last, Mr. Kratz followed up with Zbinovsky, directing him to "contract with an architect engineer or registered design professional to design this building for what [he] wanted to use it for." (R.R. at 29a.)

Based upon the observations of Mr. Evanko and Mr. Kratz, Zbinovsky was cited under Section 7-25 of the Ordinance and found guilty by a magisterial district judge on July 19, 2023. (R.R. at 1a.) Zbinovsky appealed to the trial court, and, after holding a hearing on January 3, 2024, where Mr. Evanko and Mr. Kratz testified, the trial court likewise found him guilty of the summary offense. (R.R. at 1a, 3a.) The trial court ordered that the fine of $1,000 per day be held in abeyance for 90 days until April 3, 2024. (R.R. at 3a.)

At the January 3, 2024 hearing, the trial court also provided Zbinovsky the opportunity to avoid the fines if he came prepared with a remedial plan or ameliorated the unsafe building by April 3, 2024. (R.R. at 36a-37a.)[4] Zbinovsky, who

---

[4] The trial court advised Zbinovsky:

"ZBINOVSKY: So you're asking me to prepare a remedial plan?

THE COURT: I want you to come in here with an engineer or somebody to let me know what -- is it in danger of caving in immediately? How do I fix it? Or do something to steady this building to make it safe until you can get your funding to tear it down. Or tear it down, because I'm concerned about this neighborhood."

(R.R. at 36a-37a.)

agreed six times during the hearing that the four-story building is unsafe, (R.R. at 31a, 32a-33a, 34a), explained that he planned to demolish the noncompliant building but was seeking a public grant due to the prohibitive cost. (R.R. at 33a-34a); *see also* R.R. at 41a-42a.[5] Zbinovksy had applied for public grant money with the county and state but could not provide a timeframe on the applications for the trial court's consideration. (R.R. at 33). Notably, the record indicates that Zbinovsky never obtained public funding during the 90 days between the two hearings as he again raised his efforts at trying to procure a grant at the April 3, 2024 hearing. *See* R.R. at 42a. However, despite the three options offered by the trial court for recourse against the fine, no remedial efforts were taken, and the building remained in violation of the Ordinance at the time of the April 3, 2024 hearing. (R.R. at 42a-43a.)

At the April 3 hearing, Zbinovsky again noted the expense of demolition and his efforts to apply for county and state funds to address the violation. (R.R. at 42a.) Unpersuaded, the trial court kept the $1,000 daily, cumulative fine in place beginning on April 3, 2024, and emphasized to Zbinovsky the urgency of ameliorating the noncompliant building. (R.R. at 42a-43a.) As of July 15, 2024, Zbinovsky has incurred $98,000 in fines. (R.R. at 6a.) Zbinovsky appealed to this Court.

In his Concise Statement of Errors Complained of on Appeal, Zbinovsky raised six issues.[6] The trial court analyzed the first three issues collectively and

---

[5] Zbinovsky argued that the annex could be rehabilitated while the four-story building would not be, which likely caused the disagreement as to whether the property was one or two buildings. (R.R. at 31a.) ("MR. ZBINOVSKY: The difference is the [four]-story building is going to be demolished. We're all in agreement. . . . Because the single-story building -- the city believes the single-story building should be demolished because of the violations. My position is it could be renovated, it could be restored.").

[6] Specifically, he alleged that the trial court erred as a matter of law and abused its discretion by (1) "imposing a grossly excessive and non-proportionate cumulative daily fine in violation of the **(Footnote continued on next page…)**

5

concluded that remand is proper due to its failure to consider Zbinovsky's ability to pay the daily, cumulative fine. (R.R. at 50a-51a.) The remaining three issues were deemed waived by the trial court. (R.R. at 51a-52a.)

## II. ISSUES

On appeal, Zbinovsky argues that "the trial court's imposition of fines amounting to more than $50,000 for [] Zbinovsky'[s] summary infraction of a local property maintenance [O]rdinance violate[s] the Excessive Fines Clauses of the Pennsylvania and U.S. Constitutions." (Zbinovsky's Brief at 2, 5-10.) He argues that the "effect of the citations and the enforcement in the summary matter," resulting in over $129,000 in fines, violates both the Federal and Pennsylvania Constitutions' prohibition against excessive fines. *Id.* at 8. He maintains that the cumulative total of the fine is unconstitutionally disproportionate to the offense and to the Ordinance's punitive and deterrent intent. *Id.* at 8-9. Further, he argues that enforcement of the fine "would impede his ability to remediate the property violation and be directly contrary to the state[d] purpose of the [O]rdinance." *Id.* at 10. Zbinovsky agrees with the trial court that a remand is necessary for the trial court to make the proper findings of his ability to pay the fine. *Id.* (citing *Commonwealth v. Heggenstaller*, 699 A.2d 767 (Pa. Super. 1997) and *Commonwealth v. Thomas*, 879 A.2d 246 (Pa. Super. 2005)).

---

Eighth Amendment of the United States Constitution;" (2) "imposing a grossly excessive and non-proportionate cumulative daily fine in violation of [a]rticle I, [s]ection 13 of the Pennsylvania Constitution;" (3) "imposing a grossly excessive and non-proportionate cumulative daily fine that is punitive in nature without considering any mitigating and aggravating factors, including, but not limited to, the value of the property, cost of demolition and [Zbinovsky]'s ability to pay pursuant to 42 Pa. C.S. §[ ]9730;" (4) "finding the Notice of Violation and Citation were proper under Pa. R. Crim. P. § 403, the Pennsylvania Uniform Construction Code, and the City of Wilkes Barre Ordinance 7-25 (Unsafe Building)"; (5) failing to find that the Commonwealth "failed to exhaust all administrative remedies as set forth in 34 Pa. Code § 403, the City of Wilkes Barre Ordinances and as required by the 14th Amendment due process clause;" and (6) "finding the Commonwealth met its burden in establishing a violation of the City of Wilkes Barre Ordinance Section 7-25 (Unsafe Building)." (R.R. at 54a-55a.)

6

In response, the Commonwealth of Pennsylvania (Commonwealth), the appellee in this matter, responds that the fine and the enforcement of its cumulative total is not excessive as to offend the United States or Pennsylvania Constitutions but is proportional and reasonable to the offense. (Commonwealth's Brief at 8.) The Commonwealth notes that an unsafe building is not *de minimis* but rather a threat to public safety which the Ordinance intends to address. *Id.* at 9. Last, the Commonwealth contests that remand to hold a hearing pursuant to 42 Pa. C.S. Section 9726(c) and (d) regarding the amount of the fine would be improper because the fine is "mandatory and specific" and so such hearing was not required. *Id.* at 10.

### III. ANALYSIS

A. <u>Whether the Ordinance imposing an initial and daily, cumulative fine of up to $1,000 for an unsafe building is unconstitutionally excessive under the Eighth Amendment and Article I, Section 13.</u>

Where a party challenges a fine as unconstitutionally excessive, our standard of review is *de novo*, and our scope of review is plenary. *Commonwealth v. Eisenberg*, 98 A.3d 1268, 1279 (Pa. 2014).

The Eighth Amendment to the United States Constitution prohibits the imposition of excessive fines. U.S. Const. amend. VIII.[7] The Pennsylvania Constitution also enumerates this prohibition while mirroring the Federal Constitution's wording exactly. Pa. Const. art. I, § 13.[8] While the Eighth Amendment's Excessive Fines Clause is incorporated against the States through the Fourteenth Amendment,[9] Pennsylvania interprets its provision as co-extensive with its

---

[7] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

[8] "Excessive bail shall not be required, *nor excessive fines imposed*, nor cruel punishments inflicted." Pa. Const. art. I, § 13 (emphasis added).

[9] *Timbs v. Indiana*, 586 U.S. 146, 150 (2019); U.S. Const. amend. XIV.

7

federal counterpart. *See Commonwealth v. Real Property and Improvements Commonly Known as 5444 Spruce Street, Philadelphia*, 832 A.2d 396, 399 (Pa. 2003) (*5444 Spruce Street*); *Eisenberg*, 98 A.3d at 1279 n.12, 1281 (citing *5444 Spruce Street*).

Whether a fine is unconstitutionally excessive under the Eighth Amendment is interpreted through a gross proportionality test to the "gravity of a defendant's offense" that the fine "is designed to punish." *United States v. Bajakajian*, 524 U.S. 321, 334-36 (1998); *see also United States v. Cheeseman*, 600 F.3d 270, 282-84 (3d. Cir. 2010). The United States Supreme Court notably rejected a strict proportionality test for these cases. *Bajakajian*, 524 U.S. at 336. In other words, a fine will be unconstitutionally excessive where it is grossly disproportionate to the crime's gravity that the fine seeks to punish.

Pursuant to the co-extensive treatment of the state and federal "excessive fines" language, our state Supreme Court adopted *Bajakajian's* gross proportionality test in *Eisenberg*. *Eisenberg*, 98 A.3d at 1281-82 (citing *5444 Spruce Street*, 832 A.2d at 398-403). Our courts examine the "threshold comparison between the amount of the fine and the gravity of the offense triggering the fine" when addressing article I, section 13 challenges. *Id.* at 1281. Likewise, our state Supreme Court rejected "strict proportionality between the harm resulting from the offense and the penalty imposed." *Id.* (citing *Commonwealth v. Church*, 522 A.2d 30, 34 (Pa. 1987)).

Given this close parity, we may dispose of both the Eighth Amendment and article I, section 13 arguments together for brevity's sake.[10]

---

[10] While coextensive, we acknowledge that Pennsylvania's Excessive Fines Clause need not "follow [in] lockstep" with federal law. *Eisenberg*, 98 A.3d at 1283 (citing *Commonwealth v. Baker*, 78 A.3d 1044, 1055 (Pa. 2013)) (noting preference for introspective comparison of sentences under Pennsylvania law over nationwide comparison). However, this case need not divert our path in analyzing both the federal and state constitutional challenges simultaneously.

Fines have two purposes: "to punish violators and to deter future or continued violations." *Eisenberg*, 98 A.3d at 1283 (quoting *Church*, 522 A.2d at 34). The fine may be "whatever sum is necessary to discourage future or continued violations." *Id.* (quoting *Church*, 522 A.2d at 34) As noted, strict proportionality between the offense's damage and the fine is not required if such an arrangement is not sufficient to deter future or continued offenses. *See, e.g.*, *Church*, 522 A.2d at 34 ("Thus, if the [c]ity finds that it costs $1.00 to enforce each parking violation, it is not restricted to imposing a $1.00 parking fine, if the payment of such an amount will not discourage illegal parking.") (quoting *Mastrangelo v. Buckley*, 250 A.2d 447, 464 (Pa. 1969)). Instead, the punitive and deterrence goals must be grossly proportional to the gravity of the offense but not "so great as itself to be confiscatory and beyond the bounds of all reason and justice." *Church*, 522 A.2d at 34; *see, e.g.*, *Eisenberg*, 98 A.3d at 1285 (holding a fine to be unconstitutionally excessive where the statute mandated a minimum fine of $75,000 for a $200 theft from the casino by an employee).

Generally, fines that are "tailored, scaled, and in the strictest sense, calculated to their offenses" do not offend the prohibition on excessive fines. *Eisenberg*, 98 A.3d at 1287, 1287 n.24 (citing cases). Specifically, our state courts have consistently upheld daily, cumulative fines where those fines are proportional to the gravity of the offense even when they result in substantial aggregates.

In *Woodruff v. Lower Southampton Township*, 516 A.2d 834 (Pa. Cmwlth. 1986), this Court upheld the imposition of a $100 daily, cumulative fine for a four-year period totaling $157,600 where the appellant unlawfully operated a junkyard in violation of the local ordinance. *Id.* at 835-36. Implicitly rejecting the argument that the steep amount of the fine was unreasonably excessive, this Court cited the appellant's inaction as the cause of the accumulation: "The fine is so large in this case

only because [the appellant] failed to obey the 1980 contempt order for over four years." *Id.* at 835.

In *City of Philadelphia v. Epstein*, 335 A.3d 407 (Pa. Cmwlth. 2025), this Court upheld the imposition of a daily, cumulative fine for the appellant's longstanding noncompliance with a local ordinance as not unconstitutionally excessive. *Id.* at 422. There, the appellant faced two ordinance violations that included an initial fine plus daily fines so long as the violation persisted. *Id.* at 410-11. Initially, the appellant faced a maximum fine of $3,456,900 calculated via multiplying 1,503 days of noncompliance by a $2,300 fine. *Id.* at 411. However, the trial court reduced the amount to $65,333.33 which was not unconstitutionally excessive given the appellant's longstanding failure to ameliorate potentially dangerous conditions on his property. *Id.* at 422.

By contrast, in *Commonwealth v. Heggenstaller*, 699 A.2d 767 (Pa. Super. 1997), our sister court struck down a cumulative fine as unconstitutionally excessive via a proportionality review.[11] *See id.* at 769 ("We do find, however, that the fines imposed by the trial court are extremely excessive in light of the *de minimus* nature of the violation."). The ordinance imposed a tiered, monthly cumulative fine for failure to pay the monthly $1.25 fee for 911 services beginning with "not less than $100 for the first offense, $150 for the second offense, and not less than $300, nor more than $600 for the third and subsequent offenses." *Id.* at 770. The Superior Court juxtaposed the restitution order of $28.75 for the twenty-two-month period of nonpayment with the total fine of $6,550 based on the tiered, monthly cumulative calculation. *Id.* at 769 (noting that the fine equated to 5,240 months or more than 430 years of nonpayment).

---

[11] "In general, Superior Court decisions are not binding on this Court, but they offer persuasive precedent where they address analogous issues." *Lerch v. Unemployment Compensation Board of Review*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

Our sister court concluded that the fine was unreasonably disproportionate to the gravity of not paying the $1.25 monthly fee and so it was struck down as violating article I, section 13 of the Pennsylvania Constitution. *Id.* at 769.[12]

Here, the Ordinance penalizes violations of the local building regulations both for the initial violation and for continued noncompliance, which constitutes a separate offense. Section 7-26(c)(2). Both offenses impose a fine of up to $1,000 per day. Section 7-26(c)(2). This scheme is designed "to further protect the health, safety and welfare of the general public of the city" by ensuring structural safety and safe use of buildings. Section 7-16(d). To promote this intent of the local building regulations, Wilkes-Barre deemed that maximum amount as necessary to punish and deter individuals from violating the local building regulations. Further, that amount is deemed necessary to likewise punish and deter individuals who persist in failing to ameliorate their unsafe buildings.

Similar to the Courts in *Woodruff* and *Epstein*, we hold it is proportional to punish and deter initial violations of owning an unsafe building as well as continued noncompliance with the Ordinance with a fine that maxes out at $1,000 for the initial and ongoing daily violations. In particular, without the threat of a daily, cumulative fine, the offender may have no incentive to remedy the violation and idle until conditions suit his needs at the expense of the public. *See, e.g., Church* 522 A.2d at 36 ("[T]he graded fines imposed for driving overweight vehicles are obviously designed to deter these types of violations by removing the motive to transport large overloads,

---

[12] The Superior Court, citing to 42 Pa. C.S. § 9726, instructed the trial court to consider the appellant's ability to pay the fine upon remand. *Heggenstaller*, 699 A.2d at 769. However, this instruction was not elaborated on further nor was the applicability of that section discussed regarding mandatory fines. In light of more recent decisions by this Court, the Superior Court, and our state Supreme Court, we view *Heggenstaller* as more instructive on the proportionality of a fine to the offense than on the applicability of Section 9726. *See Epstein*; *Commonwealth v. May*, 271 A.3d 475, 482 (Pa. Super. 2022); *Eisenberg*.

for a high profit, while only risking a relatively small fine."). Without this incentive to spur the offender to remedial action after the initial violation, the intent of the building regulation is undermined. The Ordinance is reasonably proportional to the gravity of the danger posed by an unsafe building to the public by fixing a fine of up to $1,000 for the initial violation and then a separate fine of up to $1,000 per day while the noncompliant building persists as a hazard to the public's safety.

The fine imposed in this case, both the initial and daily, cumulative penalties, are likewise proportional to the gravity of Zbinovksy's violation. The four-story building is seemingly hollowed out as each floor in Zbinovsky's four-story building collapsed down to the ground level. (R.R. at 25a.) Both Mr. Evanko and Mr. Kratz, who each inspected the building, immediately felt unsafe upon entry due to the extensive dilapidation of the building. (R.R. at 16a-17a, 25a.) The uncontradicted TGL Engineering report deemed the four-story building a "dangerous structure" and "present[ed] a serious hazard to the neighboring properties and street." (R.R. at 28a.) The trial court concurred with the dangerous condition of the building as it stressed to Zbinovsky the risk of collapse and the urgency to fix it before someone is harmed. (R.R. at 37a.) Even Zbinovsky himself acknowledged and did not contest the building's deterioration. *See, e.g.,* R.R. at 34a.[13] Nevertheless, he allowed the four-story building to languish in its dilapidated state despite opportunities to avoid the fine. At the January 3 hearing, the trial court gave Zbinovsky three remedial options: have an engineer testify as to how to fix the building, steady the building until demolition, or demolish it. (R.R. at 36a.) However, during the 90-day interim, Zbinovsky did none

---

[13] "THE COURT: Clearly the [four]-story building is an unsafe structure.

ZBINOVSKY: I agree with you."

(R.R. at 34a.)

12

of these remedies. Instead, Zbinovsky's only effort was to apply for public funds which he claimed was his only recourse. (R.R. at 42a.) The trial court reproached Zbinovksy for his overreliance on the hope that the public grant would come through at the expense of immediate and timely remediation of the unsafe building. (R.R. at 42a.) ("They [City of Wilkes-Barre] can't just sit back and wait for you to get -- what if you don't get the funding? You're just assuming you're going to get funding. From where? It's your building, it's your responsibility."). Meanwhile, the four-story dilapidated building lingers as a danger to the safety, health, and welfare of the public.

This kind of inaction is what the fine is designed to punish and deter. The fine's aggregate cited by Zbinovsky does not represent a one-time assessment of the offense but reflects the prolonged period of daily noncompliance. The imposition of the initial and daily, cumulative fines of $1,000 for continued noncompliance with the local building regulations is proportional to the gravity of an unsafe building persisting in its dilapidated state at the public's expense. As such, the fine at issue does not violate the Eighth Amendment or article I, section 13.

B. <u>Whether remand is proper under 42 Pa. C.S. § 9726 to consider Zbinovsky's ability to pay a mandatory fine.</u>

In its Rule 1925(a) opinion, the trial court requested that the imposition of the initial and daily, cumulative fine of $1,000 be remanded back for the trial court to consider Zbinovksy's ability to pay it pursuant to 42 Pa. C.S. § 9726.

Section 9726 of Title 42 instructs a trial court on the imposition of fines. The trial court may conclude that a fine alone suffices for a sentence after considering certain criteria such as "nature and circumstances of the crime and [] the history and character of the defendant." 42 Pa. C.S. § 9726(a). Subsection (b) outlines the court's responsibilities when imposing a fine in addition to another sentence prescription. 42 Pa. C.S. § 9726(b). In subsection (c), the trial court "shall not sentence a defendant to

13

pay a fine unless it appears of record that: (1) the defendant is or will be able to pay the fine; and (2) the fine will not prevent the defendant from making restitution or reparation to the victim of the crime." 42 Pa. C.S. § 9726(c). Last, subsection (d) adds that "[i]n determining the amount and method of payment of a fine, the court shall take into account the financial resources of the defendant and the nature of the burden that its payment will impose." 42 Pa. C.S. § 9726(d).

Section 9726 is applicable when a trial court has the discretion of imposing a fine amongst other prescribed penalties such as incarceration or probation. *Compare* 42 Pa. C.S. § 9726 *with* 42 Pa. C.S. § 9721 (Sentencing generally). However, when a fine is mandatory, Section 9726 does not apply. *See May*, 271 A.3d at 482; *see also Commonwealth v. Ford*, 217 A.3d 824, 827-28 (Pa. 2019). A fine is mandatory where the statute includes the word "shall." *May*, 271 A.3d at 482 (citing *Oberneder v. Link Computer Corp.*, 696 A.2d 148, 150 (Pa. 1997)). As such, where the summary offense lacks the threat of imprisonment as an optional sentence and instead only mandates a fine, then Section 9726(c) and (d) are not applicable.

Here, the Ordinance lacks the threat of imprisonment. *See* Section 7-26(c). The Ordinance only provides for fines up to $1,000 per day per violation, and such fines are *mandated* for each violation. Section 7-26(c). As such, Section 9726(c) and (d) do not apply, and so remand for the trial court to consider Zbinovsky's financial capability to pay the fine would be improper. This limitation is consistent with our caselaw addressing issues similar to the case at hand.

In *Church*, our state Supreme Court articulated the principle that "[t]here is no constitutional requirement that invalidates the imposition of an otherwise valid fine merely because a defendant lacks the immediate ability to pay it[] or would have

14

difficulty in doing so." 522 A.2d at 33.[14] At issue was a mandatory scaled fine for violations of weight restrictions on designated highways and bridges that would increase the penalty depending on the excess weight. *Id.* at 31-33. Notably, imprisonment was not an available penalty. *Id.* at 33. As such, the *Church* Court elaborated that this strict constraint against considering a defendant's financial capability facilitates the legislature's goal of punishment and deterrence. It both held the violator responsible for his offense and checked the judiciary, particularly "overly sympathetic judges," who may unintentionally undermine the law's intended effect of punishment and deterrence. *Id.* at 36.

And recently, in *Epstein*, this Court affirmed *Church's* reasoning by rejecting the appellant's argument that "[i]f this fine is permitted, [appellant] will clearly be unable to pay the fine" as lacking merit and citing to *Church*. *Epstein*, 335 A.3d at 422. The applicable ordinance in that case likewise lacked the threat of incarceration. *Id.* at 409-10, 409 n.1 (citing to the Philadelphia Code §§ 1-101 – 22-1409 (2024)); *see* Philadelphia Code § 1-109 (Fines and Penalties). The *Epstein* Court also rejected the argument that the "development of the [p]roperty would be impossible" if the fine is upheld explaining that the value of the noncompliant property is not a factor for the Court to consider. *Epstein*, 335 A.3d at 422 (citing to *City of*

---

[14] This principle was given significant deference in *Eisenberg*. The *Eisenberg* Court, in citing to financial statistics, referred to the financial capacity to pay the challenged fine "only as *illustrative*" of the fine's excessive character. *Eisenberg*, 98 A.3d at 1285 n.22 (emphasis added) (citing with deference the aforementioned quote from *Church*). Instead, the *Eisenberg* Court "measured" the fine "against the conduct triggering the punishment[] and the lack of discretion afforded the trial court" to find it unconstitutionally excessive. *Id.* at 1285. Last, the *Eisenberg* Court did not instruct the trial court to consider the appellant's ability to pay when it vacated the fine and remanded it to the trial court. Instead, the trial court was to impose a fine "commensurate with appellant's offense." *Id.* at 1288.

*Philadelphia v. Neely*, No. 480 C.D. 2022, 2024 WL 1251373 at *6 (Pa. Cmwlth. 2024)).

By contrast, a defendant's ability to pay a fine was to be considered when the ordinance made the threat of imprisonment available. *Commonwealth v. Margabandhu*, Nos. 1413 & 1414 C.D. 2023, 2024 WL 5205584, at *6-7 (Pa. Cmwlth. 2024) (city ordinance included imprisonment for up to 90 days where defendant defaulted on paying penalty). Likewise, the value of the noncompliant property and the cost of remedial action was also to be considered. *Commonwealth v. Halstead*, 79 A.3d 1240, 1246-47 (Pa. Cmwlth. 2013) (appeal remanded to consider value of the noncompliant property as well as feasibility and cost of repairs where incarceration up to 30 days was available in the ordinance as an alternative or addition to a fine).

Therefore, to consider the defendant's financial capacity to pay the fine as well as the value of the noncompliant property would detract from the fine's recognized purpose to punish and deter the offensive conduct. Here, Section 9726(c) and (d) do not apply to a mandatory fine; therefore, remand is improper.

Based on the foregoing, the order of the trial court is affirmed.

 

_____
PATRICIA A. McCULLOUGH, Judge

16

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania     :
    :
      v.     :    No. 523 C.D. 2024
    :
Alex Zbinovsky,     :
      Appellant     :

## ***ORDER***

AND NOW, this 23rd day of December, 2025, the April 3, 2024 order of the Luzerne County Court of Common Pleas is hereby AFFIRMED.

_____
PATRICIA A. McCULLOUGH, Judge